# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 4

OCTOBER TERM, A.D. 2014

*January 7, 2015*

GREGORY BROWN,

**Appellant
(Defendant),**

**v.**

S-14-0100

**THE STATE OF WYOMING,**

**Appellee
(Plaintiff).**

*Appeal from the District Court of Sweetwater County
The Honorable Nena James, Judge*

*Representing Appellant:*
 Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Patricia L. Bennett, Assistant Appellate Counsel.  Argument by Ms. Bennett.

*Representing Appellee:*
 Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Martin L. Hardsocg, Deputy Attorney General; Devon Kenney, Student Intern.  Argument by Mr. Kenney.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    A jury convicted Appellant Gregory Brown of one count of attempted second-degree sexual abuse of a minor, but acquitted him of three other child sexual abuse charges.  He now challenges that conviction and his sentence on three procedural grounds.  Appellant claims the district court erred in not declaring a mistrial after one potential juror made an improper remark and others who were ultimately excused became emotional during questioning at the bench during voir dire.  He also asserts that the district court impermissibly invaded the province of the jury by supplementing an instruction on the charge of which he was convicted after the jury expressed confusion about the alleged act to which it pertained.  Finally, he argues that he was denied due process because his sentence was imposed more than one year after his conviction.  We affirm.

## ISSUES

[¶2]    1.    Did the district court abuse its discretion by not granting a mistrial due to a potential juror's statement that Appellant "should be locked up," and because other potential jurors became emotional during voir dire?

2.    Did the district court abuse its discretion in supplementing the jury instructions to reflect the allegations in the Information to clarify the conduct charged?

3.    Did the delay between Appellant's conviction and sentencing violate his constitutional right to speedy sentencing?

## FACTS

[¶3]    Although the underlying facts of this case are not particularly pertinent to this appeal, we will summarize them to provide context for the charges and proceedings before the district court.  When A.I. was approximately five years old, her mother married Appellant.  As A.I. matured, Appellant's behavior towards her became inappropriate and disturbing.  Two incidents were the basis for the charges against him with regard to A.I.

[¶4]    The first occurred when A.I. was thirteen years old.  The victim testified that in the summer of 2007, she had fallen asleep in her bed while Appellant was "spooning" with her.  When A.I. awoke, Appellant's finger was inside her bra, stroking her near her breast.

[¶5]    The second event occurred in December of that same year.  A.I. testified that after watching a scary movie ("Halloween") alone together, Appellant and A.I. went to her room to sleep on the bed.  During the night, A.I. awoke to find Appellant reaching up her

1

shirt toward her breasts. She pushed his hand away several times before he attempted to put his hand down A.I.'s pants, eventually reaching as far as her pubic hair. Having thwarted Appellant's advance, A.I fell back asleep. She later woke up to find her shirt pulled up and his face between her bare breasts while he touched them with his hands. A.I. rolled over onto her stomach and the episode ended.

[¶6] A.I. initially kept these incidents secret, but later told her mother everything. A.I.'s mother immediately took her and the other children from the home, reported the incidents to law enforcement, and then filed for divorce shortly thereafter. However, she subsequently asked the county attorney's office not to pursue charges because she did not believe Appellant would do anything like he had to A.I. again.

[¶7] Three years later, A.I.'s mother was disturbed when she learned from her children that Appellant was engaging in the same apparent grooming conduct with his new girlfriend's daughter, K.M. Appellant had been observed lying on his bed with K.M while they watched television, and he also kissed her on the lips. A.I.'s mother reported her concerns to the Department of Family Services. Appellant was not charged criminally for any of his actions at this point. Soon thereafter, however, Appellant's son recorded a cell phone video of Appellant placing his bare foot in K.M.'s crotch area, which prompted the State to prosecute him for that event and his conduct with A.I.

[¶8] We now turn to the procedural events relating to Appellant's claims of error. Appellant was charged with four counts of child sexual abuse: Count I, second degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6-2-315(a)(iii), based upon the first incident where Appellant's finger was inside A.I.'s bra, stroking her near her breast; Count II, second degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6-2-315(a)(iii), based upon the second incident when Appellant pulled up A.I.'s shirt and put his face between her breasts while touching them; Count III, attempt to commit second degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6-1-301(a)(i) and § 6-2-315(a)(iii), based upon the second incident when Appellant attempted to put his hand down A.I.'s pants; and Count IV, third degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6-2-316(a)(iv), based upon the recorded incident involving Appellant's girlfriend's daughter K.M.

[¶9] The circuit court held a preliminary hearing, found probable cause on all counts, and bound the case over to the district court. Appellant was arraigned and pled not guilty to all four charges. The case proceeded to trial in due course.

[¶10] Before voir dire began, the district court told counsel that it preferred to resolve issues during jury selection in open court, even if the circumstance involved a sensitive matter. Specifically, the judge advised:

I want you to be careful about telling people that they automatically get to come into my office if there is an issue that they feel is sensitive. . . . I don't have time to take all these people in my office. Some of the things can be resolved at the bench. I realize in a case like this, especially if they were victims of sexual assault or whatever, that they don't want to talk about it in front of everyone, but some of them can be brought up to the bench and we can quietly do it and we can resolve it there. For the ones we can't that we need more time and more privacy on, we'll come in here. But it will take five days to get a jury if we haul everybody in here. So you are free to tell them if there is something sensitive we can go up to the bench and talk to the judge about it, but don't say we are all automatically going to go into my office.

[¶11] With these ground rules in place, voir dire began. After swearing in the potential jurors and explaining generally what the case was about, the district court admonished them that they were to answer questions posed by counsel without expressing their opinions about the case, if any of them had formed one. In other words, they were to answer questions concerning whether they had formed opinions either yes or no, and if the answer was yes, to wait for further questioning or direction from the court.

[¶12] Shortly thereafter, when the prosecutor asked whether any potential jurors would have difficulty fairly deciding a case involving sexual abuse of a minor, several raised their hands. The first potential juror called upon said the matter was personal, and she was therefore allowed to approach the bench to explain outside of the hearing of the venire. After she emotionally explained that she had been the victim of sexual abuse, the district court dismissed her for cause without objection from either party.

[¶13] After this first potential juror was excused, J.R. was called to be examined for cause in her place. Unfortunately, J.R. disregarded the court's instruction not to express an opinion when questioned about his ability to be fair, and the following exchange took place within the hearing of the venire:

*Prosecutor*: Well, I do need to ask, if there is something that you would have raised your hand, what would it have been?

*Potential Juror, J.R.*: With what this case is. I mean, I was just – I couldn't – I'm not going to be able to be fair about it. I mean, my opinion, I guess.

*Prosecutor*: Okay.

3

*Potential Juror, J.R.*: Goes back to the prejudice thing.

*Prosecutor*: Is this based on a personal experience for you? The question that I was just on.

*Potential Juror, J.R.*: No, it's nothing personal. It's my opinion. My opinion is he should be locked up.

[¶14] Defense counsel immediately moved for a mistrial, claiming that the entire jury pool had been contaminated by J.R.'s opinion that Appellant "should be locked up." In the alternative, he asked the district court to give an instruction on the presumption of innocence. The judge replied that although she had already advised the potential jurors not to state an opinion, she could not "stop them from blurting things out." J.R. was excused for cause, but the court determined the outburst did not warrant a mistrial. It then advised the potential jurors to disregard J.R.'s statement and that Appellant was presumed to be innocent.

[¶15] Voir dire resumed, and the prosecutor continued to ask potential jurors questions regarding their experiences with sexual assault or sexual abuse, and whether they would be able to set aside any feelings they had and render a verdict based solely on the evidence presented. Several potential jurors raised their hands, with some becoming very emotional in subsequent questioning. The first person called on requested to approach the bench and was dismissed for cause because she was a victim of sexual abuse and was also the parent of a child who had been sexually abused.

[¶16] At this point, defense counsel suggested that such personal conversations with potential jurors would more appropriately take place in chambers, out of the sight as well as the hearing of the venire. He pointed out that two potential jurors who had been examined at the bench had been shaking and crying while divulging very sensitive experiences, and that other potential jurors could observe the emotional state these individuals were in when they were discussing their circumstances. The prosecutor agreed. The judge settled on considering whether to examine particular jurors in chambers on an ad hoc basis; that is, she planned to decide on a case-by-case basis whether the level of emotion shown by a potential juror rendered examination in chambers more appropriate than at the bench in the sight of the rest of the panel.

[¶17] Other potential jurors subsequently had to share very personal details of their lives, some doing so at the bench and others in chambers, after which they were excused for cause. All were victims of sexual abuse or parents of children who had been sexually abused. Defense counsel renewed his motion for a mistrial because of the cumulative effect of potential jurors becoming visibly emotional and upset at the bench in sight of the panel, and because of J.R.'s stated opinion that Appellant should be locked up. The

4

district court again denied the motion, holding that J.R.'s outburst and the emotional reactions did not merit a mistrial.

[¶18] After the jury was empanelled, trial proceeded without further incident until jury deliberations. During the formal jury instruction conference, the judge astutely noted that the proposed jury instruction for Count III was less specific than the instructions for Counts I and II. The instructions for Counts I and II explicitly stated that the sexual contact that Appellant was charged with was "touching [A.I.'s] breast" on specific occasions, but the instruction for Count III stated only that Appellant did "an act," which was unspecified. Neither attorney objected to the proposed instruction for Count III, and it was given without adding any specific language describing the charged act. The district court advised counsel to be aware of the language in this instruction and to ensure that they addressed the conduct it pertained to in their closing arguments.

[¶19] The judge then read the agreed upon instructions to the jury, of which the following are pertinent to this appeal:

**Instruction No. 10**

The law raises no presumption against the defendant but rather, the presumption of law is in favor of his innocence. In order to convict the defendant of the crime charged, every material and necessary element to constitute such crime must be proved beyond a reasonable doubt and if the jury has a reasonable doubt on any necessary element, it is your duty to give the benefit of such doubt to the defendant and acquit him. This presumption of innocence is not merely a matter of form which the jury may disregard at pleasure, but rather it is a part of the law of the land and it is a right guaranteed by that law to every person accused of a crime. Thus presumption of innocence continues with the defendant through all the stages of the trial and until the case has been finally submitted to the jury and until the jury has found that this presumption has been overcome by the evidence in the case convincing you of his guilt beyond a reasonable doubt.

The Information in this case in only a formal charge and is not to be considered [as] evidence of guilt on the part of the defendant. Nothing is to be taken by implication against him.

**Instruction No. 19**

The elements of the crime of Attempted Sexual Abuse of a Minor in the Second Degree, as charged in Count III, are:

1. During the month of December, 2007;
2. In Sweetwater County, Wyoming;
3. The Defendant, Gregory Brown;
4. With intent to commit the crime of Sexual Abuse of a Minor in the Second Degree;
5. Did an act which was a substantial step toward commission of the crime of Sexual Abuse of a Minor in the Second Degree.

As used in this instruction, "substantial step" means conduct which is strongly corroborative of the firmness of the Defendant's intention to complete the commission of the crime.

Closing arguments by counsel followed. The case was then submitted to the jury.

[¶20] After a few hours of deliberation, the jury sent the judge a note expressing confusion as to whether the charge in Count III related to a specific act or was a "Hail Mary" pass for the prosecution. *See infra*, ¶ 37. While Appellant objected to a further instruction clarifying the change, the court determined that a supplemental instruction was necessary. Accordingly, the judge gave an instruction which explained that "the act alleged in Element 5 of Instruction No. 19 is 'attempting to touch [A.I.'s] vaginal area.'"

[¶21] Later that same day, the jury returned with a guilty verdict on Count III, but it acquitted on the other three counts. Because Appellant is claiming an unreasonable delay in his sentencing, we will describe what transpired after the verdict was entered:

- Appellant filed a motion for a new trial on July 23, 2012, pursuant to W.R.Cr.P 33, and a hearing was set for the first of August. On August 1, 2012, the district court denied the motion after hearing arguments from both parties.

- A presentence report was ordered on July 27, 2012 and filed on October 2, 2012.

- On October 9, 2012, the district court set sentencing for October 29, 2012. Appellant moved to continue sentencing to allow additional time to prepare, and the State did not object. Sentencing was therefore continued until November 16, 2012.

- The parties appeared on November 16, but sentencing was again continued in order to allow the parties additional time to research the State's request to introduce W.R.E. 404(b) evidence at sentencing, and for defense counsel to respond and produce a proposed witness list.

- After various motions and issues leading to several continuances were decided, a sentencing hearing was set for May 14, 2013. On May 2, the State filed a motion to continue sentencing because the prosecutor and some of the State's witnesses were unavailable. The district court granted the motion after holding a hearing. While Appellant's counsel conceded responsibility for many of the delays in sentencing, he nevertheless objected to this continuance.

- The district court reset the sentencing hearing for May 29, 2013, and the hearing began on that date.[1] However, it could not be completed in the allotted time; when time ran out, Appellant had not finished presenting his evidence.

- The district court continued the sentencing hearing to June 18, 2013. However, the prosecutor had a scheduling conflict, and defense counsel had planned a vacation at that time, and the judge reset the hearing for July 23, 2013 at their request.

- A week before the hearing, Appellant filed a motion to dismiss asserting that a "delay in sentencing over one (1) calendar year from the date guilt was established is a violation of [Appellant's] due process, is against the interest of justice and is presumptively unreasonable." The district court denied the motion, finding that while some delay was attributable to the State, a number of the continuances were to accommodate Appellant and his counsel.

- The continued hearing occurred as scheduled on July 23, 2013. The remaining evidence was presented by Appellant and arguments were made by both sides. The district court sentenced Appellant to not less than thirty-three nor more than sixty months incarceration.

Appellant timely perfected this appeal.

## DISCUSSION

*Impartial Jury*

---

[1] Both parties refer to this hearing as being held on either May 28 or 29, 2013, but for some unexplained reason the date reflected on the transcript in the record is dated June 29, 2013. We assume this is simply a clerical error.

[¶22] Article 1, § 10 of the Wyoming Constitution as well as the Sixth Amendment to the United States Constitution guarantees defendants in criminal proceedings a trial by an impartial jury. *Miller v. State*, 904 P.2d 344, 352 (Wyo. 1995). A criminal defendant's constitutional right to due process also guarantees the right to an impartial jury. *Id.* "An impartial jury consists of those jurors who will conscientiously apply the law and find the facts." *Id.* "Impartiality is not measured easily by tests as it is not a technical conception but rather a state of mind." *Id.*

[¶23] The mechanism that assures a defendant's right to a fair and impartial jury is voir dire, which affords each party an opportunity to examine the venire to discover whether potential jurors have biases and prejudices which would prevent them from deciding the case fairly. *Id.*; *see Summers v. State*, 725 P.2d 1033, 1037 (Wyo. 1986), *adhered to on reh'g*, 731 P.2d 558 (Wyo. 1987). "A trial court has broad discretion concerning the questioning of prospective jurors during voir dire because it has the duty to determine if any of the prospective jurors are so biased and prejudiced they could not render a fair and impartial verdict." *Miller*, 904 P.2d at 352. That said, such discretion must be exercised subject to the essential demands of fairness. *Id.*

[¶24] Appellant asserts that fairness and impartiality were lost when a potential juror expressed an opinion that Appellant "should be locked up" and others became emotional in the presence of the entire jury pool during voir dire. He argues that the district court erred in denying his motion for a mistrial because all of the potential jurors, including those ultimately selected, were tainted by these events. After reviewing the record and considering controlling case law, we must disagree.

[¶25] We will not reverse the denial of a motion for mistrial absent a clear abuse of discretion that causes prejudice to the defendant. *Oldman v. State*, 998 P.2d 957, 963 (Wyo. 2000); *see also Janpol v. State*, 2008 WY 21, ¶ 21, 178 P.3d 396, 404 (Wyo. 2008); *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352 (Wyo. 2006). The decision to deny or grant a mistrial is necessarily discretionary because the district court is in a better position than we are to assess the potential for prejudice. *Janpol*, ¶ 21, 178 P.3d at 396. A district court abuses its discretion when it could not have reasonably concluded as it did. *Id.* "Reasonably" means sound judgment exercised with regard to what is right under the circumstances without being arbitrary or capricious. *Thomas*, ¶ 10, 131 P.3d at 352.

[¶26] Appellant relies heavily on *Miller v. State, supra.* In that case, a potential juror said in earshot of the entire venire that the defendant had stolen his horse. 904 P.2d at 351. The defendant moved for a mistrial, but the district court denied the motion. *Id.* at 351-52. While the potential juror was dismissed for cause, the judge did not instruct the jury to disregard the statement or take any other corrective measures. *Id.* at 352. Under those circumstances, we concluded that the district court had abused its discretion in denying the defendant's motion for a mistrial. *Id.* at 354.

8

[¶27]   On the other hand, the State directs our attention to *Oldman v. State, supra*.  There a potential juror said that he thought the defendant was guilty.  998 P.2d at 964.  The district court denied a motion for mistrial.  This Court affirmed.  *Id.* at 964-65.  In doing so, we distinguished *Miller*, explaining:

> This case is distinguishable with respect to two salient points. First, the nature of the prospective juror's remarks and second, the court's reaction to those remarks. The venireman in *Miller* stated that he had personal knowledge that the defendant had committed a previous crime. We said there that the exposure of the jury panel to such specific information required a presumption of implied juror bias and the disqualification of the panel. By contrast, in this case, the venireman said:
>
>> You've spent a lot of money so far on this case. You've got him to court. And in my opinion, if I had this opinion right now, I'd say he's guilty because I believe you've done what you think is right.
>
> This juror did not claim any personal knowledge that [the defendant] had committed a criminal offense. The remarks were not specific to [the defendant] or to the case. Essentially, they demonstrated a general attitude about the criminal justice system. On this premise, this case is distinguishable from the direct accusation involved in *Miller*.

*Id.* at 964 (citations omitted).

[¶28]   We also distinguished *Miller* because of the district court's effective response in *Oldman*.  *Id.*  While the venireman was dismissed for cause in *Miller*, the other potential jurors were neither instructed to disregard the improper remarks nor given any other curative advisements.  904 P.2d at 352.  The district court in *Oldman* "took prompt and appropriate remedial steps."  998 P.2d at 964.  Not only was the individual dismissed for cause immediately, but the district court also instructed the other potential jurors to disregard the statement and adequately advised them so as to "assure[] itself that the remaining jurors not only understood the presumption of innocence, but that they were committed to it, and that they understood the State's burden of proof."  *Id.*

[¶29]   Potential juror J.R.'s comment that Appellant "should be locked up" is similar to that made in *Oldman*.  J.R. did not claim any personal knowledge that Appellant had committed a criminal offense: "No, it's nothing personal.  It's my opinion.  My opinion

9

is he should be locked up." The statement was a baseless reaction that conflicts with the presumption of innocence.

[¶30] The district court also took appropriate curative measures in this case. It dismissed J.R. for cause, instructed the members of the jury pool to disregard the statement, and at the behest of defense counsel advised them on the presumption of innocence:

> Everyone in this courtroom needs to, and you are instructed to, disregard the statement that was made by [J.R.] about his personal opinion in this case. When we began this process about 45 minutes ago I very clearly stated that if you are asked if you have an opinion say yes or no, but do not state what that opinion is. Again I give you that directive as questions are asked. But you are specifically ordered to disregard his statement.
>
> At this time I also advise you that the Defendant in this case is presumed to be innocent and that presumption remains with the Defendant unless and until the State is able to prove him guilty beyond a reasonable doubt. That is a legal concept that you'll be hearing a lot about in the trial, but at this point it is important to state that up front. So I think we can move on from here, but again, please do not blurt out your personal opinions. If you have one and you are asked about it say you have it or you don't, but don't actually get into [the] substance of it.

By its prompt advisements, the district court repaired whatever harm, if any, had been caused by the improper statement, as had been done in *Oldman*.

[¶31] In an attempt to distinguish *Oldman*, Appellant contends that the words "locked up" go to punishment and not guilt. However, the transcript provides context for the statement, and we are unable to construe it as Appellant says we should. J.R. was saying, in substance, that he believed Appellant to be guilty without hearing any evidence. In any event, the jury was instructed that it should not concern itself with punishment.[2] Of course, the jury had no opportunity to consider what sentence Appellant should receive, as that decision is entrusted to the district judge.

---

[2] The district court instructed the jury "that in arriving at a verdict in this case the question of possible punishment of the Defendant is of no concern to the jury and should not in any sense enter into or influence your deliberation."

[¶32] With regard to Appellant's assertion of prejudice due to the visible emotion of some potential jurors while talking about their personal circumstances at the bench, we have carefully reviewed the record and find that those events did not deprive Appellant of a fair and impartial jury. All the venire who became emotional while explaining the source of their concerns were excused for cause, and the record does not indicate that other potential jurors became biased because they observed those excused. Indeed, Appellant was acquitted of three of the four counts against him, which supports a conclusion that the jury decided the case based upon the evidence, and that it was not biased by either the improper statement or the emotional state of some in the jury pool.

[¶33] "An impartial jury consists of those jurors who will conscientiously apply the law and find the facts." *Miller*, 904 P.2d at 352 (citing *Wainwright v. Witt*, 469 U.S. 412, 423, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985)); *see also Smith v. State*, 2008 WY 98, ¶¶ 24-25, 190 P.3d 522, 530 (Wyo. 2008). While courts must strive to insulate jurors from every compromising situation, we are cognizant that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Teniente v. State*, 2007 WY 165, ¶ 8, 169 P.3d 512, 520 (Wyo. 2007) (citations omitted). We therefore conclude that the district court did not abuse its discretion by denying Appellant's motion for a mistrial due to a potential juror's statement that Appellant "should be locked up" and because other potential jurors became emotional at voir dire.

[¶34] We take this opportunity to point out that the sensitive portions of questioning those potential jurors who shared their very personal circumstances involving sexual abuse should have been handled in chambers to assure them the measure of dignity and privacy they deserved. Potential jurors are summoned on pain of being held in contempt if they fail to appear. They are administered an oath that requires them to truthfully answer questions put to them in front of other members of the community. They have no choice but to be there and to be honest.

[¶35] As the voir dire in this case established, sadly far too many potential jurors or their children, siblings, or friends have been sexually abused. It is a virtual certainty that there will be victims of child sexual or other abuse in the venire in cases such as this. Some of them may never have told anyone of their nightmare, or may have told only their closest associates, spouses, or counselors. They are understandably fearful of exposing something of which they may be unfairly ashamed to other members of the venire. Speaking of abuse inflicted upon them or their children may draw tears of anger or regret.

[¶36] Although conducting examinations of potential jurors at the bench may be efficient and quite proper in many circumstances, care should be taken not to revictimize citizens who are simply performing their civic duty. We would strongly encourage district judges to extend them the humanity of allowing them to answer questions likely to elicit these kinds of experiences in chambers, out of the sight and possible hearing of their neighbors. Questions can be structured so as to identify those likely to have to

disclose these kinds of experiences in order to be identified and excused early on. An assurance that they can come to chambers will alleviate the anxiety potential jurors must feel in the unfamiliar and foreboding environment of a crowded courtroom. We believe this is in fact the more common practice, and that it is the proper way to treat citizens who must divulge very personal information when they serve our judicial system.

### *Supplemental Jury Instruction*

[¶37] After a few hours of deliberating, the jury sent an articulate and observant note to the judge asking what "act" Appellant was accused of attempting to commit in Count III.

> At this point, the jury is deadlocked on a decision of the Count III contained within Instruction No. 19. This stems from the ambiguity of element 5, specifically the words "an act." While some feel it applies to the alleged attempt to approach the pubic area, others feel it applies to any attempted "sexual contact" which may have occurred on the "Halloween" [movie] incident. It has even been suggested that perhaps incidents earlier in December of 2007 apply. The very non-specificity invites the notion that this charge is a "Hail Mary" for the prosecution should the other charges fail. We, the jury, ask for specificity, or at least guidance, in the absence of such specificity of charge. All 3 of the other charges are more specific.

This was the very question the trial judge raised at the instruction conference.

[¶38] Over Appellant's objection, the district court determined it was appropriate to give the following supplemental instruction:

### Instruction No. 27

> You are instructed that the act alleged in Element 5 of Instruction No. 19 is "attempting to touch [A.I.'s] vaginal area."

This instruction appropriately tracked the language in the Information[3] and it made the instruction regarding Count III consistent with the instructions on Counts I and II. *See supra*, ¶ 18.

---

[3] The Information states with respect to Count III that Appellant "did attempt to touch A.I.'s vaginal area . . . ."

12

[¶39] Appellant argues that Instruction No. 27 was improper and that the district court improperly invaded the province of the jury as the trier of fact. He contends that the supplemental instruction impermissibly instructed the jury on facts it should consider rather than just answering a question about the law.

[¶40] When we review claims of error involving jury instructions, the district court is afforded significant deference. *Luedtke v. State*, 2005 WY 98, ¶ 28, 117 P.3d 1227, 1232 (Wyo. 2005). A district court is "given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." *Id.* (citations omitted); *see also Hawes v. State*, 2014 WY 127, ¶ 15, 335 P.3d 1073, 1078 (Wyo. 2014). Its ruling on an instruction must be prejudicial to constitute reversible error. *Heywood v. State*, 2007 WY 149, ¶ 26, 170 P.3d 1227, 1234 (Wyo. 2007) (citation omitted), *abrogated on other grounds by Granzer v. State*, 2008 WY 118, 193 P.3d 266 (Wyo. 2008). Because the purpose of jury instructions is to provide guidance on the applicable law, prejudice will result when the instructions confuse or mislead the jury. *Id.*

[¶41] Where the original instructions are insufficient and confusing, we have found that not providing a supplemental instruction identifying the conduct claimed to constitute a crime under a particular count of an Information can result in prejudicial error. In *Heywood*, we reversed the defendant's conviction because the district court declined to give a supplemental instruction to address the confusion reflected in a written question to the judge. *Id.*, ¶ 30, 170 P.3d at 1235. There, the jury instructions on each of three separate counts identified the charged acts as a "sexual intrusion," but failed to identify which count related to each of the defendant's alleged separate "sexual intrusion[s]." *Id.*, ¶ 22, 170 P.3d at 1233. The jury asked the judge to clarify what particular act, *i.e.*, which alleged specific sexual intrusion, related to which count. *Id.*, ¶ 18, 170 P.3d at 1232. The district court refused to supplement the jury instructions, responding only that it was unable to provide further instruction and that the jury had to rely on its recollection of the evidence and argument and then reach a decision utilizing the instructions already given. *Id.*, ¶ 19, 170 P.3d at 1232.

[¶42] On appeal, we held that the district court's refusal to provide further instruction was prejudicial because the jury did not know which act it was asked to convict the defendant of under each count. *Id.*, ¶ 30, 170 P.3d at 1235. In so holding, we succinctly observed that: "(1) instructions that leave doubt as to the circumstances under which the crime was committed are insufficient; (2) instructions that confuse or mislead the jury are insufficient; (3) jury questions revealing confusion or a lack of understanding should be answered." *Id.*, ¶ 29, 170 P.3d at 1235. We also pointed out that Wyoming statutes permit a judge to "further instruct the jury after deliberations have begun when a question arises as to the evidence or the law, and in numerous cases over the years we have addressed the exercise of that discretion." *Id.*, ¶ 27, 170 P.3d at 1235; *see* Wyo. Stat. Ann. §§ 1-11-209 and 7-11-204 (LexisNexis 2013).

[¶43] Accordingly, if the original instructions are insufficient or if the jury expresses confusion or lack of understanding of a significant element of the applicable law, it is a court's duty to provide additional instructions. *Heywood*, ¶ 28, 170 P.3d at 1235 (citing 75A Am.Jur.2d *Trial* § 944 (2007)). The district court did exactly that in this case. It correctly gave a supplemental instruction that followed the language in the Information and clarified the confusing and ambiguous language in the original instruction relating to Count III.

[¶44] In support of his argument, Appellant relies upon our holding in *Snow v. State*, 2009 WY 117, 216 P.3d 505 (Wyo. 2009). In *Snow*, we analyzed a judge's duty to instruct the jury, highlighting the differences between legal and factual matters. Quoting the United States Court of Appeals for the District of Columbia Circuit, we said:

> Juries' legal questions, which are what usually prompt supplemental instructions, differ fundamentally from their factual questions for an obvious reason: juries do not serve as the "triers of law." They are not expected to divine the law for themselves the way they are expected to find the facts. Rather, the trial judge, aided by counsel, provides the jury with the proper legal standard. Indeed, when a jury makes explicit its legal difficulties a trial judge should clear them away with concrete accuracy.
>
> By contrast, where a jury's questions relate to a factual matter, a substantive reply (whether by the judge or the attorneys) risks interfering with the jury's exclusive responsibility for resolving factual questions. For this reason, several circuits have upheld district courts that refused to answer juries' factual questions[.]

*Id.*, ¶ 31, 216 P.3d at 515 (quoting *United States v. Ayeni*, 374 F.3d 1313, 1320 (D.C. Cir. 2004) (Tatel, J., concurring)) (citations and quotation marks omitted); *see also Dawes v. State*, 2010 WY 113, ¶ 32, 236 P.3d 303, 310 (Wyo. 2010).

[¶45] This Court found that the jury's question in *Snow* asked about facts to support the charge. *Snow,* ¶ 32, 216 P.3d at 516. We reversed the district court because its answer to the question impermissibly directed the jury to facts that tended to support a conviction of the charge, rather than simply explaining what conduct was charged. *Id.*, ¶ 35, 216 P.3d at 517. In reaching our conclusion, we reasoned that

> [t]his case is nothing like *Heywood* where we reversed because the district court failed to provide a substantive

answer to a jury question. The jury there did not ask what evidence should be considered in regard to each crime charged, but asked which crime it was to deliberate upon under each count.

*Id.,* ¶ 33, 216 P.3d at 516 (citation omitted).

[¶46] As in *Heywood*, the jury in this case did not ask what evidence should be considered with regard to each crime charged; rather, it asked what conduct was alleged to constitute the crime charged in Count III. The district court followed our direction in *Heywood* and provided an appropriate supplemental instruction consistent with the Information. It did not therefore abuse its discretion.

### *Delay in Sentencing*

[¶47] One year and seventeen days after Appellant's conviction, the district court imposed his sentence. Appellant filed a motion to dismiss sentencing for violation of his right to a speedy sentencing, which was denied. He challenges the district court's denial of that motion, asserting that he was denied due process because of the delay between his conviction and sentence.

[¶48] We review claims that a sentence was not imposed within a reasonable time under an abuse of discretion standard. *Roesch v. State*, 2008 WY 141, ¶ 5, 196 P.3d 795, 797 (Wyo. 2008); *Schade v. State*, 2002 WY 133, ¶ 14, 53 P.3d 551, 557 (Wyo. 2002). "This Court will not disturb a sentence on the ground of sentencing procedures absent a showing by the defendant of an abuse of discretion, procedural conduct prejudicial to him, circumstances that manifest inherent unfairness and injustice, or conduct that offends the public sense of fair play." *Roesch*, ¶ 5, 196 P.3d at 797 (citation omitted).

[¶49] Wyoming's Rules of Criminal Procedure instruct that a "[s]entence shall be imposed without unnecessary delay, but the court may, when there is a factor important to the sentencing determination that is not then capable of being resolved, postpone the imposition of sentence for a reasonable time until the factor is capable of being resolved." W.R.Cr.P. 32(c)(1). In *Yates v. State*, 792 P.2d 187 (Wyo. 1990), this Court recognized the right to a speedy sentencing and created a presumption of unreasonableness when a sentence is delayed for more than a year after guilt is established. We did so based upon concerns of fundamental fairness that due process guarantees:

> We elect to hold that a delay in sentencing in excess of one calendar year from the date guilt is established, either by trial, whether to a jury or to the court, or upon a plea of guilty or nolo contendere, is presumptively unreasonable. A court may not pronounce sentence on a defendant after the expiration of

15

such time, unless the record clearly establishes those facts and circumstances that excuse the delay, thus making later imposition of the sentence reasonable. The State must bear the burden of establishing those facts and circumstances. . . . While we hold that the delay in excess of one year is presumptively unreasonable, we do not hold that the delay serves to deprive the district court of jurisdiction. Rather, we hold that the delay exceeds the bounds of reason if it occurs beyond that date and, in the interest of fairness, due process of law, and expeditious handling of court matters, a court should be foreclosed from imposing sentence after the one year period of time.

. . .

The rule that we espouse protects important rights of the convicted defendant. It serves to prevent the possibility that a greater punishment than is deserved will be imposed because of subsequent conduct that results in a violation of the probation. It also serves to ensure that any vagaries of memory will not interfere with the imposition of a sentence appropriate to the individual and the crime.

*Id.* at 191-92.

[¶50]  In *Schade v. State*, sentencing was delayed roughly one year and thirty days after a change of plea.  After reviewing the reasons for the delay, we held that the State met its burden by showing that much of the delay was caused by frequent continuances requested by the defendant.  2002 WY 133 at ¶ 15, 53 P.3d at 558.  We explained that "[t]he district court permitted [defendant] and his counsel to thoroughly pursue a wide range of alternative community placement options prior to sentencing . . . [and he] was given the opportunity to investigate and apply for acceptance in a variety of programs." *Id.*  "The court could have limited this process, but the failure to cut short these inquiries was not an abuse of discretion or unreasonable under the circumstances." *Id.*

[¶51]  A few years later, in *Roesch v. State*, we dealt with another speedy sentencing claim and again found that the State had provided sufficient facts and circumstances to excuse the delay.  2008 WY 141 at ¶ 23, 196 P.3d at 800.  The defendant pleaded guilty in February 2006, but was not sentenced until December 2007.  *Id.*, ¶ 8, 196 P.3d at 797. Because the delay between defendant's guilty plea and sentencing was obviously more than one year, we found that under *Yates* the delay was presumptively unreasonable and that the State was required to present facts and establish circumstances which excused the delay.  *Id.*  After examining the circumstances explaining why the defendant had not been

sentenced in a timely fashion—he had been taken into custody by federal authorities pursuant to a writ of habeas corpus *ad prosequendum* and remained in federal custody until those proceedings ended—we concluded the State had met its burden. *Id.*, ¶ 23, 196 P.3d at 800.

[¶52] In the instant case, we are convinced that the State carried its burden to satisfactorily explain the delay, and that it was not unreasonable for the district court to sentence Appellant one year and seventeen days after his conviction. As set forth above, *see* ¶ 21, there were several legitimate reasons for the length of time between conviction and imposition of sentence. Various significant issues, including W.R.E. 404(b) evidence questions, required resolution before the sentencing hearing could take place. Scheduling conflicts with counsel for both sides compounded the situation to a certain extent. A considerable portion of the delay was attributable to Appellant. *See* ¶ 21; *Roesch*, ¶ 23, 196 P.3d at 800 ("When delays in sentencing are caused by the defendant, we have held that they are excusable.").

[¶53] The circumstances here are plainly different than those in cases where we determined that the sentences were void due to the district court's violation of the defendants' rights to a speedy sentencing. In *Roesch*, we distinguished those cases, explaining:

> This case is very different from the circumstances where we ruled that the sentences were void because the district court violated the defendants' rights to a speedy sentencing. In *Yates*, the district court had attempted to use a Wyo. Stat. Ann. § 7-13-302 (Michie 1987) sentence deferral on one of several counts and, accordingly, had delayed the imposition of sentence on the deferred count for more than a decade. Applying the newly adopted rule, this Court concluded that the district court's decision to suspend imposition of sentence for more than ten years was unreasonable. In *Daugherty*, the district court deferred sentencing on one of two counts for an undetermined amount of time, without stating its reasons for doing so. After revoking Daugherty's probation on the first count, the district court proceeded to sentence him on the second count. The sentencing took place three years after guilt had been established. We ruled that the delay was unreasonable.
>
> Because the sentences in *Yates* and *Daugherty* were imposed after the defendants engaged in subsequent bad conduct, this Court was concerned that their due process rights had been violated because they were subjected to

17

greater punishment than if they had been sentenced in a timely fashion. As we stated earlier, the purpose of the rule requiring timely sentencing is to prevent the possibility that a greater punishment than is deserved will be imposed based upon conduct occurring after the finding of guilt but prior to sentencing. The rule requiring speedy sentencing also ensures that memory problems will not improperly affect the sentencing.

*Roesch*, ¶¶ 25-26, 196 P.3d at 801 (citations omitted).

[¶54] After carefully reviewing the record, we find no reason to believe that the delay prejudicially impacted Appellant's sentence. The district court did not abuse its discretion in sentencing Appellant when it did or in denying his motion to dismiss.

[¶55] Affirmed.