# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 12

OCTOBER TERM, A.D. 2015

*January 26, 2016*

JULIAN ROBERT MARFIL,

Appellant
(Defendant),

v.

S-15-0125

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel, Cheyenne, WY.  Argument by Mr. Westling.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Caitlin F. Young, Assistant Attorney General; Darrell D. Jackson, Faculty Director, Prosecution Assistance Program; and Bradford H. Coates, Student Director. Argument by Mr. Coates.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    A jury convicted Julian Marfil of two counts of second degree sexual abuse of a minor.  On appeal, Mr. Marfil contends that the district court abused its discretion when it refused his proffered instruction defining the term "inflicts," as that term is used in the charged statute's phrase "inflicts sexual intrusion on a victim."  Mr. Marfil further contends that the district court erred when it denied the jury's request for a dictionary during its deliberations.  We affirm.

## ISSUE

[¶2]    Mr. Marfil frames the issue on appeal as follows:

> I.      Did the trial court err by refusing Defendant's proffered instruction regarding the definition of "inflict" as used in W.S. § 6-2-315(a)(i) and then further err by refusing to give a definition after the jury requested a dictionary?

## FACTS

### A.    Facts Leading to Charges Against Mr. Marfil

[¶3]    On January 8, 2014, Deputy Mitchell Chapman of the Laramie County Sheriff's Office asked two other Sheriff's deputies to conduct a welfare check on fifteen-year-old B.L., at the Pioneer Hotel in Cheyenne, Wyoming.  This request stemmed from information Deputy Chapman received while following up on a report that B.L. had missed a therapy appointment arranged through the Wyoming Department of Family Services.  Deputy Chapman knew B.L., felt she was a smart kid, and in an attempt to get her therapy appointment rescheduled, he located B.L.'s mother and had a conversation with her.

[¶4]    During Deputy Chapman's conversation with B.L.'s mother, he asked B.L.'s mother to reschedule B.L.'s therapy appointment and urged her to get B.L. back into school.  B.L's mother agreed that B.L. was a bright kid and needed to stay in school.  B.L.'s mother then told Deputy Chapman that she was concerned about B.L. because she believed B.L. might be staying at the Pioneer Hotel with a 45-year-old man named Julian Marfil.  B.L.'s mother was concerned with the thirty-year difference in their ages, but she indicated that she did not know whether the two were having sex.  Deputy Chapman told her he would make arrangements for a welfare check.

[¶5]    Per Deputy Chapman's request, Deputies Burrow and Crosby went to the Pioneer Hotel.  They went to Room 228 and found B.L. and Mr. Marfil in bed.  Mr. Marfil was wearing shorts and a t-shirt, and B.L. was wearing a football jersey and shorts.  B.L.

1

initially gave Deputy Burrow a false name and said that she was Mr. Marfil's adult daughter but then admitted her true identity. After Deputies Burrow and Crosby were unable to locate either of B.L.'s parents, the Sheriff's Office took her into protective custody.

[¶6] On January 13, 2014, the State filed an information charging Mr. Marfil with two counts of second degree sexual abuse of a minor.

## B. Trial

[¶7] B.L. testified at Mr. Marfil's trial and described what occurred between the two of them. B.L. met Mr. Marfil through Mr. Marfil's sister, who worked with B.L.'s mother. Mr. Marfil began sending B.L. text messages in June 2013, starting with a text message asking B.L. if she knew where he could find his sister. In July 2013, Mr. Marfil began sending her text messages more regularly, and the text messages became what B.L. viewed as romantic. During this same month, B.L. began spending more time with Mr. Marfil, and they began kissing. At this time, B.L. was fourteen years old.

[¶8] Toward the end of October 2013, B.L. began spending the night with Mr. Marfil and having sex with him. B.L. testified that Mr. Marfil had sex with her about three times a week in October and November. In December 2013, the two spent less time together, but Mr. Marfil still had sex with B.L. one to two times every two weeks until his arrest in January 2014.

[¶9] On December 16, 2013, B.L. turned fifteen, by which time she was already pregnant by Mr. Marfil. B.L. gave birth to the child on September 14, 2014. On cross-examination, B.L. agreed that she was not tricked into having sex with Mr. Marfil, that he did not pay her for sex, and that he did not force her in any way to have sex with him. On re-direct, B.L. testified that while she was with Mr. Marfil, she believed she loved him, but she later realized she did not. B.L. further testified:

> Q. What are your thoughts now, looking back on the relationship?
> A. I should have thought it through more but . . .
> Q. And why is that?
> A. Um, 'cause it really changed how I'm going to, like, finish school and everything.

## C. Jury Instructions and Deliberations

[¶10] In Instructions Nos. 8 and 9, the district court, with the agreement of the parties, instructed the jury on the elements of the two charged counts. Instruction No. 8 defined the elements for Count I:

The elements of the crime of Sexual Abuse of a Minor in the Second Degree, as charged in Count I in this case, are:
1. On or about the 1st day of July, 2013 through the 9th day of January 2014
2. In Laramie County, Wyoming
3. The Defendant, Julian Marfil
4. Inflicted sexual intrusion upon B.L.
5. B.L. was thirteen (13) through fifteen (15) years of age; and
6. The Defendant was at least four (4) years older than B.L. [1]

[¶11] Among other instructions, Mr. Marfil offered a theory of defense instruction and an instruction defining the term "inflict." Mr. Marfil did not deny having sexual intercourse with B.L. or knowing that she was only fourteen years old when he began having sexual intercourse with her. Mr. Marfil's theory of defense was that he did not "inflict" sexual intrusion on B.L. because she consented to the sex. The district court allowed Mr. Marfil's theory of defense instruction, which as given to the jury read:

Mr. Marfil asserts that he did not inflict sexual intrusion on B.L. The State must prove beyond a reasonable doubt that the sexual intercourse was inflicted upon B.L. This is a matter which the jury must decide based on all of the facts and circumstances of the case. The law requires that the sexual intercourse must be inflicted. If the State fails to prove beyond a reasonable doubt that Mr. Marfil inflicted sexual intrusion, then you must find him not guilty of both Counts I and II.

[¶12] The district court refused, however, Mr. Marfil's proffered instruction defining the term "inflict." That instruction read:

Inflict means to impose as something that must be borne or suffered; or to impose anything unwelcome.

[¶13] Before refusing this defense instruction, the district court heard argument from both parties. In the course of that argument, the court had the following exchange with the State:

---

[1] The elements instruction for Count II was identical except for the date of the offense, which for Count II was a date specific in January 2014.

3

THE COURT: Mr. Sandford, we're going to get a question early on from the jury when they go back to deliberate this case: What does the word "inflict" mean? How do we respond to that?

MR. SANDFORD: Your Honor, I believe the best way to respond to that is, You've been given the instructions. And we've done this I think many times with jury instructions. They sometimes ask for the definition of reasonable doubt. They sometimes ask the Court for the definition of very ordinary words, looking for some guidance.

[¶14] After hearing argument from both parties, the district court explained its decision to refuse the defense instruction:

THE COURT: All right. Well, the Court, first of all, Miss Johnson, would compliment you on your argument. It is a very creative argument. And you have done an exemplary job of raising the issue and of representing the best interests zealously of Mr. Marfil in this case. But I think that the State has a more persuasive argument as to not defining that term.

I do agree with Mr. Sanford that really what we're trying to do with that definition is inject a back-door consent defense, which would be inconsistent as the Court understands Wyoming law. Again, I have spent some time researching the origins, I guess, of what is often called statutory rape. It begins in 1908. And it talks about how the law in the *Ross* case implies incapacity to consent in a situation where an individual is a minor. And in that case the Supreme Court said, No matter what the actual state of a victim's mind may be at the time, the law resists for her.

That concept in the law was repeated again in the case of *State v. Scadden*, in 1987, 732 P.2d 1036, in which the majority in that case said, "The law in Wyoming and indeed the law in general has always limited some sexual contacts. The primary purpose for these prescriptions against sexual relations is the absence of acceptable consensual participation in the act."

"The State of Wyoming has a compelling interest in regulating sexual contacts between persons when one of those persons does not consent or lacks the capacity to consent. Incest or statutory rape are readily apparent examples." And it cites to the *Ross* case.

4

The next case I would discuss would be the one that I visited with you about, Miss Johnson, the *Pierson* case. And again, in that case the Wyoming Supreme Court in 1998 at 956 P.2d 1119 discusses the difference between and the distinction between immoral or indecent liberties under what was then a Title XIV offense and the sexual assault or statutory rape charge that's set forth in 6-2-304.

And they make an issue about the fact that a person under the age of 16 legally cannot consent. However, in a situation where the victim is 16 or 17, that the fact that the victim did consent is an issue that the jury can consider in deciding whether or not the immoral or indecent liberties statute has been violated.

And then finally most recently there is the *Crain* case from 2009 authored by Justice Hill based upon the most recent version of the sexual-abuse-of-a-minor statute. And in that case in dicta certainly the Court recognizes that a minor who is under the age of 16 years of age cannot consent to an act of sexual intercourse with a person who is over four years older than the victim. So I see no change in the law from 1908 to the present that a person under the age of 16 years of age is [not] legally capable of consenting.

The "inflict" language has been language that has been in the sexual assault statute for some period of time. My understanding of that language would be that a person inflicts the sexual assault simply by virtue of the fact that their victim is under the age of consent.

So, therefore, the Court – that is a long way of saying I guess the Court is not going to give your instruction. I do agree with the State that I think it injects confusion, and it does not help clarify the law for the jury; but, in fact, it would confuse the jury.

[¶15] Shortly after the jury began its deliberations, the jury requested a dictionary and a copy of the statute Mr. Marfil was accused of violating. Both defense counsel and counsel for the State took the position that the request should be denied and the jury should be referred instead to the instructions it had been given.

## D.    Verdict and Sentence

[¶16] On October 8, 2014, the jury returned a verdict of guilty on both counts of second degree sexual abuse of a minor. On February 10, 2015, the district court entered a Judgment and Sentence, which sentenced Mr. Marfil to two concurrent sentences of

thirteen to sixteen years.  Mr. Marfil thereafter timely filed his notice of appeal to this Court.

**DISCUSSION**

**A.** **Jury Instructions**

**1.** **Standard of Review**

[¶17]  In his first claim of error, Mr. Marfil contends that the district court erred in refusing his proffered instruction defining the term "inflicts."  This claim of error presents both a question of statutory interpretation and a question whether the district court erred in refusing the instruction proffered by Mr. Marfil.  Questions of statutory interpretation are questions of law, which this Court reviews de novo. *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 2015 WY 127, ¶ 14, 357 P.3d 1118, 1124 (Wyo. 2015) (citing *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015)).  We review a district court's refusal of a proposed jury instruction for an abuse of discretion. *Gonzalez-Ochoa v. State*, 2014 WY 14, ¶ 18, 317 P.3d 599, 604 (Wyo. 2014) (citing *Mowery v. State*, 2011 WY 38, ¶ 13, 247 P.3d 866, 870 (Wyo. 2011)).  We are also guided by the following in our review of a district court's decisions regarding jury instructions:

> When we review claims of error involving jury instructions, the district court is afforded significant deference. *Luedtke v. State*, 2005 WY 98, ¶ 28, 117 P.3d 1227, 1232 (Wyo.2005). A district court is "given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." *Id*. (citations omitted); *see also Hawes v. State*, 2014 WY 127, ¶ 15, 335 P.3d 1073, 1078 (Wyo.2014). Its ruling on an instruction must be prejudicial to constitute reversible error. *Heywood v. State*, 2007 WY 149, ¶ 26, 170 P.3d 1227, 1234 (Wyo.2007) (citation omitted), *abrogated on other grounds by Granzer v. State*, 2008 WY 118, 193 P.3d 266 (Wyo.2008). Because the purpose of jury instructions is to provide guidance on the applicable law, prejudice will result when the instructions confuse or mislead the jury. *Id*.

*Brown v. State*, 2015 WY 4, ¶ 40, 340 P.3d 1020, 1031 (Wyo. 2015).

**2.** **Statutory Interpretation: Meaning of the Term "Inflicts"**

6

[¶18] Mr. Marfil was charged with two counts of sexual abuse of a minor in the second degree in violation of Wyo. Stat. Ann. § 6-2-315(a)(i) (LexisNexis 2015), which states, "Being seventeen (17) years of age or older, the actor ***inflicts*** sexual intrusion on a victim who is thirteen (13) through fifteen (15) years of age, and the victim is at least four (4) years younger than the actor." (Emphasis added.) Mr. Marfil asserts that the legislature's use of the term "inflicts," as opposed to the term "engages in" found in the other proscribed conduct, was a deliberate choice and that the term "inflicts," as used in subsection (a)(i), should be interpreted as requiring something more than the term "engages in." In particular, Mr. Marfil contends that the term "inflicts" should be interpreted to mean: "to impose as something that must be borne or suffered; or to impose anything unwelcome." With this definition, Mr. Marfil essentially argues that if the sexual intrusion of the victim is consensual, it cannot be "inflicted."

[¶19] Mr. Marfil's argument presents a question of statutory interpretation. Our rules of statutory interpretation dictate that our primary objective in interpreting this or any statute is to give effect to the legislature's intent. *L & L Enters. v. Arellano (In re Arellano)*, 2015 WY 21, ¶ 13, 344 P.3d 249, 252 (Wyo. 2015). In this regard, we have held that where a term used in a criminal statute is not given a statutory definition, we conclude the legislature did not mean for the term to have a specialized meaning. *Masias v. State*, 2010 WY 81, ¶ 25, 233 P.3d 944, 951 (Wyo. 2010); *Ewing v. State*, 2007 WY 78, ¶ 10, 157 P.3d 943, 946 (Wyo. 2007). We have further said that in our search for legislative intent, we must

> construe each statutory provision *in pari materia,* giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence.

*Kroenlein Trust*, ¶ 22, 357 P.3d at 1126 (quoting *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014)).

[¶20] With these principles in mind, we turn to our interpretation of the term "inflicts," as used in the statute defining the offense of sexual abuse of a minor in the second degree. That statute proscribes four different acts and reads:

> (a) Except under circumstance constituting sexual
> abuse of a minor in the first degree as defined by W.S. 6-2-

7

314, an actor commits the crime of sexual abuse of a minor in the second degree if:

> (i) Being seventeen (17) years of age or older, the actor *inflicts* sexual intrusion on a victim who is thirteen (13) through fifteen (15) years of age, and the victim is at least four (4) years younger than the actor;

> (ii) Being sixteen (16) years of age or older, the actor *engages in* sexual contact of a victim who is less than thirteen (13) years of age;

> (iii) Being eighteen (18) years of age or older, the actor *engages in* sexual contact with a victim who is less than eighteen (18) years of age and the actor is the victim's legal guardian or an individual specified in W.S. 6-4-402; or

> (iv) Being eighteen (18) years of age or older, the actor *engages in* sexual contact with a victim who is less than sixteen (16) years of age and the actor occupies a position of authority in relation to the victim.

(b) A person convicted under subsection (a) of this section is subject to imprisonment for not more than twenty (20) years, unless the person convicted qualifies under W.S. 6-2-306(e).

Wyo. Stat. Ann. § 6-2-315 (LexisNexis 2015) (emphasis added).

[¶21] We reject Mr. Marfil's proffered definition of the term "inflicts" for several reasons. First, the term "inflicts" is not defined in the statutes governing sexual assault offenses. *See* Wyo. Stat. Ann. § 6-2-301 (LexisNexis 2015) (providing definitions for terms used in article governing sexual assault offenses). As noted above, this alone indicates the legislature attached no special meaning to the term.

[¶22] Second, when we read the term "inflicts" in the context of the surrounding statutory provisions, Mr. Marfil's proposed definition simply does not fit. Wyo. Stat. Ann. § 6-2-315 uses both the terms "inflicts" and "engages in" to specify four different prohibited acts, but each act constitutes the same offense, second degree sexual abuse, and is punishable by the same penalty. If the term "inflicts" carried the meaning Mr. Marfil urges, which is an unwelcome or forcible sexual intrusion, as opposed to the consensual act Mr. Marfil argues is contemplated by the term "engages in," we would not expect this parity. We would instead expect that any act that is "inflicted" would carry a greater penalty given the absence of victim consent. *See Pierson v. State*, 956 P.2d 1119, 1125 (Wyo. 1998) (recognizing that disparity of punishment between offenses implies a

8

legislative view that the crime bearing the greater punishment is one that entails more culpable conduct).[2] That the legislatively-prescribed penalty for the various sexual assault offenses does not necessarily vary depending on whether the act was "inflicted" or "engaged in," is further evidence that the legislature used the terms "inflicts" and "engages in" interchangeably and attached no special meaning to its use of the term "inflicts."

[¶23] Finally, this Court has also held that "[w]hen this Court interprets a statute and the legislature makes no material legislative change in the provision thereafter, the legislature is presumed to acquiesce in the Court's interpretation." *Kroenlein Trust*, ¶ 27, 357 P.3d at 1127 (quoting *Wyo. Dep't of Revenue v. Qwest Corp.*, 2011 WY 146, ¶ 23, 263 P.3d 622, 629 (Wyo. 2011)). As the district court observed, this Court has long held that consent is not a defense to an offense involving sexual assault of a minor. *Phillips v. State*, 2007 WY 25, ¶ 16, 151 P.3d 1131, 1136 (Wyo. 2007) (consent of victim under age

---

[2] The same is true with respect to Wyo. Stat. Ann. § 6-2-316, which governs sexual abuse of a minor in the third degree. It too uses both terms in specifying prohibited acts, with each act then punishable by the same penalty. Section 316 provides:

> (a) Except under circumstance constituting sexual abuse of a minor in the first or second degree as defined by W.S. 6-2-314 and 6-2-315, an actor commits the crime of sexual abuse of a minor in the third degree if:
>
> (i) Being seventeen (17) years of age or older, the actor ***engages in*** sexual contact with a victim who is thirteen (13) through fifteen (15) years of age, and the victim is at least four (4) years younger than the actor;
>
> (ii) Being twenty (20) years of age or older, the actor ***engages in*** sexual intrusion with a victim who is either sixteen (16) or seventeen (17) years of age, and the victim is at least four (4) years younger than the actor, and the actor occupies a position of authority in relation to the victim;
>
> (iii) Being less than sixteen (16) years of age, the actor ***inflicts*** sexual intrusion on a victim who is less than thirteen (13) years of age, and the victim is at least three (3) years younger than the actor; or
>
> (iv) Being seventeen (17) years of age or older, the actor knowingly takes immodest, immoral or indecent liberties with a victim who is less than seventeen (17) years of age and the victim is at least four (4) years younger than the actor.
>
> (b) A person convicted under subsection (a) of this section is subject to imprisonment for not more than fifteen (15) years.
>
> (c) A person charged with violating the provisions of paragraph (a)(iii) of this section shall be subject to the original jurisdiction of the juvenile court, except the matter may be transferred to the district court having jurisdiction of the offense as provided in W.S. 14-6-237.

Wyo. Stat. Ann. § 6-2-316 (LexisNexis 2015) (emphasis added).

of sixteen is not a defense); *Ross v. State*, 93 P. 299, 303 (Wyo. 1908) (minor "is to be regarded as resisting, no matter what the actual state of her mind may be at the time"). Importantly, this has been our holding even where the charging statute uses the term "inflicts." *Phillips*, ¶ 16, 151 P.3d at 1136[3]; *see also Crain v. State*, 2009 WY 128, ¶¶ 2-4, 218 P.3d 934, 936-37 (Wyo. 2009) (upholding conviction under same version of § 6-2-315(a)(i) where sexual intercourse was consensual). Because the legislature has not revised any of the statutes defining sexual assault of a minor to correct our interpretation, we presume our past interpretation is consistent with the meaning the legislature intended for the language it used and will adhere to that interpretation.

[¶24] Mr. Marfil's proposed definition of the term "inflicts" would require a conclusion that if a sexual intrusion is consensual, it cannot be inflicted. This definition incorporates a consent defense that this Court has long rejected and otherwise finds no support in the statutes governing sexual assault offenses. For this reason, and because there is no distinction between the terms "inflicts" and "engages in," as used in § 6-2-315, we reject Mr. Marfil's definition.

### 3.    District Court's Refusal of Instruction

[¶25] From our discussion above, it of course follows that we find no abuse of discretion in the district court's refusal of Mr. Marfil's proffered instruction defining the term "inflicts." First, the instruction would have been a misstatement of law and for this reason alone was properly refused. *Brown*, ¶ 40, 340 P.3d at 1031 (instruction must accurately state the law). Additionally, as we noted above, where a term used in a criminal statute is not given a statutory definition, we presume the legislature did not mean for the term to have a specialized meaning. *Masias*, ¶ 25, 233 P.3d at 951; *Ewing*, ¶ 10, 157 P.3d at 946. "A district court is not required to define a statutory term unless the term has a technical or legal meaning different than its common meaning." *Masias*, ¶ 25, 233 P.3d at 951 (no need to define "submission"); *see also Dawes v. State*, 2010 WY 113, ¶ 33, 236 P.3d 303, 311 (Wyo. 2010) (no need to define "owner"); *Morris v. State*, 2009 WY 88, ¶ 16, 210 P.3d 1101, 1105-06 (Wyo. 2009) (no need to define "knowingly"); *Ewing*, ¶ 10, 157 P.3d at 946 (no need to define "drawn"); *Rowe v. State*, 974 P.2d 937, 940 (Wyo. 1999) (no need to define "intentionally"). The district court was not required to define the term "inflicts" and did not err in refusing Mr. Marfil's proffered instruction.

---

[3] In *Phillips*, our holding was in relation to a conviction for third degree sexual assault, which per the statute then in effect required a showing that "the actor is at least four (4) years older than the victim and *inflicts* sexual intrusion on a victim under the age of sixteen (16) years." *Phillips*, ¶ 7, 151 P.3d at 1133, n.1 (emphasis added).

## B.      Denial of Jury's Request for Dictionary

[¶26] In his next claim of error, Mr. Marfil contends that the district court erred in failing to instruct the jury on the definition of the term "inflicts" when the jury requested a dictionary during its deliberations.  The jury's request for a dictionary came shortly after it began deliberations and resulted in the following exchange between the district court and counsel:

> THE COURT:      All right.  We already have a question, a quick question from the jury requesting, Number 1, a dictionary; and, Number 2, requesting a copy of the law that was broken.
> I'll be glad to hear from counsel as to how we ought to respond to the jury's question.
> Miss Johnson.
> MS. JOHNSON:      Judge, I think the answer to Question No. 1 is: We can't give you a dictionary.  I think the answer to Question No. 2 is: The law that was broken is contained in the elements instruction.  I really think that's what it boils down to.
>
> * * *
>
> MR. SANDFORD:  I agree with counsel on that point.  I guess my suggestion to the Court is that we give the standard, you've been given the instructions; the response we give quite often when we all agree that we cannot answer a question.  I think that really works for both of these.
> THE COURT:      All right.
> MS. JOHNSON:      You should have given them my instruction, Judge.  You can give them my instruction now, Judge.
> THE COURT:      Well, I knew that we were going to have a question.  So I think that the answer that the Court would give with regard to 1 is:  We cannot provide you with a dictionary.  And with respect to Number 2 is:  That the law is contained within the elements which you have been given, and direct them to again consider all of the instructions and the evidence in reaching their verdict.
> MS. JOHNSON:      That's good.

[¶27] The State argues on appeal that Mr. Marfil waived his right to appeal the district court's response to the jury and his claim of error should be treated as invited error because the court did precisely what defense counsel requested and denied the jury

11

request for a dictionary. We would perhaps agree if it were the denial of the requested dictionary that Mr. Marfil is contesting, but that is not Mr. Marfil's argument on appeal. Mr. Marfil does not contend the jury should have been given a dictionary. Instead, he argues that when the jury requested a dictionary, it should have been given his proffered definition of the term "inflicts." Arguably, defense counsel did ask the district court to respond to the jury by giving it the defense instruction defining "inflicts," so we will not treat this claim on appeal as invited error or as requiring a plain error analysis.

[¶28] This Court has held that "if the original instructions are insufficient or if the jury expresses confusion or lack of understanding of a significant element of the applicable law, it is a court's duty to provide additional instructions." *Brown*, ¶ 43, 340 P.3d at 1031 (citing *Heywood v. State*, 2007 WY 149, ¶ 28, 170 P.3d 1227, 1235 (Wyo. 2007)). Mr. Marfil contends that when the jury requested a dictionary, this showed the jury was confused concerning the meaning of the term "inflicts" and it should therefore have been given his proffered definition of the term. We disagree.

[¶29] First, the jury did not specify the term for which it needed a definition and we therefore cannot say with any certainty that the jury's request related to confusion over the definition of "inflicts." Additionally, as we discussed earlier, the term "inflicts" was not one requiring definition and Mr. Marfil's proposed definition would have been a misstatement of law. We thus find no error in the district court's failure to provide the jury with Mr. Marfil's proffered definition of the term "inflicts" in response to the jury's request for a dictionary.

## CONCLUSION

[¶30] There is no difference between the terms "inflicts" and "engages in" as those terms are used in Wyo. Stat. Ann. § 6-2-315, and the term "inflicts" does not in and of itself require a showing that sexual contact or intrusion at issue was unwelcome. The district court therefore did not err in refusing Mr. Marfil's proposed instruction. Affirmed.

12