2008 WY 141

**James Allen ROESCH, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Nos. S–08–0067, S–08–0068.**

Supreme Court of Wyoming.

Dec. 2, 2008.

¶ 8). Interest accrues on unpaid balances from the due date, which is not necessarily the end of

the tax year.

Representing Appellant: Diane M. Lozano, State Public Defender, PDP; Tina N. Kerin, Appellate Counsel; Michael H. Reese, Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] James Allen Roesch claims the State violated his right to speedy sentencing when it failed to retrieve him from federal authorities so that it could sentence him within one year after he pleaded guilty to state charges. We conclude the State presented sufficient facts and circumstances to excuse the delay and, consequently, affirm.

## ISSUE

[¶ 2] Mr. Roesch presents the following issue on appeal:

Whether the imposition of Defendant's sentences over one year after his guilty verdict violated his right to speedy sentencing under Rule 32 W.R.Cr.P. or the Sixth Amendment to the United States Constitution or Article 1 § 10 of the Wyoming Constitution.

The State restates the issue as:

Did impermissible delay occur in Appellant's sentencing, and did the district court therefore abuse its discretion when it sentenced Appellant?

## FACTS

[¶ 3] The underlying facts of this case are not in dispute. Mr. Roesch pleaded guilty, pursuant to a plea agreement, to one count of larceny and one count of aggravated burglary. The charges were brought in separate cases in the state district court, but he was arraigned on those charges at the same time on February 6, 2006. Sentencing was scheduled for May 1, 2006. In the meantime, Mr. Roesch was indicted in federal court on two counts of being a felon in possession of firearms. Before he could be sentenced in state court, federal authorities took custody of Mr. Roesch pursuant to a writ of habeas corpus ad prosequendum.

[¶ 4] Mr. Roesch remained in federal custody until the federal charges were resolved on October 19, 2007, at which point he was returned to state custody. The state district court then held a hearing on a motion to dismiss sentencing filed by Mr. Roesch in June 2007 and denied it. On December 3,

2007, the district court sentenced Mr. Roesch consistent with the plea agreement to serve 8 to 10 years of imprisonment on the aggravated burglary charge and 4 to 5 years on the larceny charge. The district court ordered his sentences to be served concurrent to one another and to his federal sentence. Mr. Roesch appealed.

## DISCUSSION

 [¶ 5] Mr. Roesch challenges the district court's denial of his motion to dismiss for violation of his right to a speedy sentencing. The district court has broad discretion in making sentencing decisions. *Daugherty v. State*, 2002 WY 52, ¶ 12, 44 P.3d 28, 33 (Wyo.2002). "This Court will not disturb a sentence on the ground of sentencing procedures absent a showing by the defendant of an abuse of discretion, procedural conduct prejudicial to him, circumstances that manifest inherent unfairness and injustice, or conduct that offends the public sense of fair play." *Id.*, (citing *Brower v. State*, 1 P.3d 1210, 1216 (Wyo.2000)). Similarly, we have specifically stated that we review claims of violations of the right to speedy sentencing under the abuse of discretion standard. *Schade v. State*, 2002 WY 133, ¶ 14, 53 P.3d 551, 557 (Wyo.2002).

[¶ 6] W.R.Cr.P. 32(c)(1) directs that "[s]entence shall be imposed without unnecessary delay." We recognized the right to a speedy sentencing in *Yates v. State*, 792 P.2d 187 (Wyo.1990). Considering the Wyoming Rules of Criminal Procedure [1] and concerns of fundamental fairness as dictated by constitutional due process guaranties, we stated:

> We elect to hold that a delay in sentencing in excess of one calendar year from the date guilt is established, either by trial,

whether to a jury or to the court, or upon a plea of guilty or nolo contendere, is presumptively unreasonable. A court may not pronounce sentence on a defendant after the expiration of such time, unless the record clearly establishes those facts and circumstances that excuse the delay, thus making later imposition of the sentence reasonable. The State must bear the burden of establishing those facts and circumstances.... While we hold that the delay in excess of one year is presumptively unreasonable, we do not hold that the delay serves to deprive the district court of jurisdiction. Rather, we hold that the delay exceeds the bounds of reason if it occurs beyond that date and, in the interest of fairness, due process of law, and expeditious handling of court matters, a court should be foreclosed from imposing sentence after the one year period of time.

*Id.* at 191.[2] *See also, Daugherty*, ¶¶ 33–44, 44 P.3d at 38–40 (applying Rule 32(c)(1)).

[¶ 7] We explained the rationale behind the rule as follows:

> The rule that we espouse protects important rights of the convicted defendant. It serves to prevent the possibility that a greater punishment than is deserved will be imposed because of subsequent conduct that results in a violation of the probation. It also serves to ensure that any vagaries of memory will not interfere with the imposition of a sentence appropriate to the individual and the crime.

*Yates*, 792 P.2d. at 192 (citations omitted).

 [¶ 8] Mr. Roesch pleaded guilty to the state charges on February 6, 2006, and he was not sentenced until December 3, 2007. The delay between his guilty plea and sentencing was obviously more than one year;

1. At the time *Yates* was decided, the applicable rule was set out in W.R.Cr.P. 33 and stated, in relevant part, "[s]entence shall be imposed without unreasonable delay." *Yates*, 792 P.2d at 190. Since then, the rules have been modified and W.R.Cr.P. 32(c)(1) currently governs timely sentencing. The parties do not argue there is any relevant difference between the former and current rules.

2. Mr. Roesch suggests that the constitutional right to a speedy trial set out in the Sixth Amendment to the United States Constitution and Wyoming Constitution Art. 1, § 10 protects an accused's right to speedy sentencing. He indicates that perhaps the test set out in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), should apply to his situation. However, he limits his argument and analysis to the principles espoused in *Yates* and its progeny and does not provide a cogent argument as to how the *Barker* factors should apply here. In the absence of more detailed briefing, we are not persuaded we should modify our test for speedy sentencing.

consequently, under *Yates,* the delay was presumptively unreasonable and the State was obligated to show facts and circumstances which excused the delay.

[¶ 9] The State claims the delay was reasonable because Mr. Roesch had been taken into custody by federal authorities pursuant to the writ. The State argues it was unable to regain custody of Mr. Roesch until his federal proceedings were completed and he contributed to the delay in those proceedings. Mr. Roesch counters that the State retained custody and/or jurisdiction of him and he was simply "on loan" to, or "borrowed" by, the federal government. He argues, therefore, that the State should have been able to retrieve him in order to sentence him in a timely fashion.

[¶ 10] A writ of habeas corpus ad prosequendum is used to bring a person who is a prisoner in another jurisdiction before a court for proceedings on pending charges. *See* 39 Am.Jur.2d *Habeas Corpus* § 6 (2008). 28 U.S.C. § 2241 provides general authority for federal courts to issue writs of habeas corpus. Although writs of habeas corpus ad prosequendum are not specifically referenced in the federal statute, it is generally recognized that they are allowed under the statutory language which provides that prisoners may be brought before another court "to testify or for trial." 28 U.S.C. § 2241(c)(5). *See also,* 39 Am.Jur.2d *Habeas Corpus* § 6 (2008). The scope of the writ and the resulting relationship between state and federal authorities is not, however, spelled out in the statute.

[¶ 11] Mr. Roesch claims that *Brown v. Perrill,* 28 F.3d 1073 (10th Cir.1994) (on rehearing), supports his position that the State did not relinquish custody to federal authorities. The Tenth Circuit stated that a transfer of a state prisoner to federal authorities pursuant to a writ of habeas corpus ad prosequendum is "a matter of comity between the state and the federal government designed to accord [the defendant] 'expeditious administration of justice.'" *Id.* at 1074, quoting *Hernandez v. United States Attorney General,* 689 F.2d 915, 918 (10th Cir.1982). "Comity" is "the informal and voluntary recognition by courts of one jurisdiction of the laws and

judicial decisions of another." *Merriam–Webster's Dictionary of Law* (1996). The *Brown* court refused to adopt a per se rule as to when detention pursuant to a writ becomes custody. Nevertheless, the court held that, under the facts of that case, a 19 month detention by federal authorities amounted to federal custody. *Brown,* 28 F.3d at 1075.

[¶ 12] *Thomas v. Brewer,* 923 F.2d 1361 (9th Cir.1991), also contains an interesting discussion on the issue of which jurisdiction has custody of a prisoner under a writ of habeas corpus ad prosequendum. The Ninth Circuit stated, "[a]s a general rule, the first sovereign to arrest a defendant has priority of jurisdiction for trial, sentencing, and incarceration." *Id.* at 1365. However, according to *Thomas,* the language of the writ is one factor in determining which jurisdiction technically has custody. *Id.* at 1365–66.

[¶ 13] While we find the distinction between custody, detention and/or "loan" of a defendant of some interest, that distinction does not strike us as dispositive as to the question of whether the State had a valid excuse for failing to retrieve Mr. Roesch in order to sentence him in a timely fashion. Neither *Brown* nor *Thomas* addressed the issue in the context of speedy sentencing.

[¶ 14] Mr. Roesch suggests that the State should have filed its own request for a writ of habeas corpus ad prosequendum, like it did in *Spencer v. State,* 2005 WY 105, ¶ 6, 118 P.3d 978, 980–81 (Wyo.2005). A careful reading of *Spencer,* however, reveals that the State was not successful in obtaining Spencer's presence for sentencing prior to the conclusion of his federal case:

On November 14, 2003, Spencer was scheduled to appear before the district court for sentencing. However, at that time he was in the custody of federal authorities and not present for sentencing. Sentencing was then rescheduled. On December 9, 2003, Spencer again was to appear for sentencing. Spencer had been brought to Casper for this proceeding, but was inexplicably transported back to Wheatland by federal authorities before it was convened. At this December 9, 2003

proceeding, it became evident that the district court would need to issue a Writ of Habeas Corpus Ad Prosequendum and such a writ was issued. Apparently because of the difficulty of getting Spencer before the court for sentencing, the district court continued sentencing proceedings in this matter until after the federal proceedings were concluded.

*Id.* In addition, it is conceivable that, because a writ of habeas corpus ad prosequendum is a matter of comity between the federal and state authorities, the State could have petitioned the federal authorities for Mr. Roesch's return for purposes of sentencing. This discussion is, however, theoretical and does not answer the question of whether the State had a valid excuse for the sentencing delay.

[¶ 15] The State argues that the Interstate Agreement on Detainers (IAD), codified at Wyo. Stat. Ann. §§ 7–15–101, *et. seq.* (LexisNexis 2007) prevented it from retrieving Mr. Roesch from federal authorities.[3] It maintains that, if it had sought custody of Mr. Roesch prior to the conclusion of his federal proceedings the federal government would have refused its petition because such a transfer would have violated the antishuttling provisions of the IAD, resulting in dismissal of the federal charges. The State's argument is not persuasive. The IAD applies only when a prisoner is confined in one state under a term of imprisonment and there are pending charges in another state. *See, e.g.,* § 7–15–101, Article III(a); Article (IV)(a). At the time the federal authorities took Mr. Roesch pursuant to the writ, he had not been sentenced on the state charges. Consequently, he was not serving a term of imprisonment and the IAD provisions did not apply.

[¶ 16] In order to answer the question of whether the delay was unreasonable in this case, we will examine the writ and the history of Mr. Roesch's federal detention. The United States' petition for the writ stated:

1. That [Mr. Roesch] is presently incarcerated in the Laramie County Deten-

tion Center, in Cheyenne, Wyoming, on State charges.

2. That on March 22, 2006, an Indictment charging a violation of Felon in Possession of a Firearm, was filed against [Mr. Roesch] in the District of Wyoming.

3. That a Federal detainer has been lodged against [Mr. Roesch] and Federal proceedings against [him] have not been commenced ... except for the filing of the Indictment and arrest Warrant on March 22, 2006.

4. That [Mr. Roesch] should be brought from the Laramie County Detention Center, Cheyenne, Wyoming, to this Court for an initial appearance and subsequent legal proceedings on these charges.

WHEREFORE, the Assistant United States Attorney prays that a Writ of Habeas Corpus Ad Prosequendum issue....

The resulting order stated, in pertinent part:

**IT IS HEREBY ORDERED** that a Writ of Habeas Corpus Ad Prosequendum issue out of the Court directing the production of the body of [Mr. Roesch] before this Court on or before May 1, 2006, for further proceedings in this matter.

The writ, which was entered on April 24, 2006, directed production of Mr. Roesch consistent with the order. Mr. Roesch appeared before the federal court for his initial appearance and arraignment on May 1, 2006.

[¶ 17] The State, apparently unaware that Mr. Roesch had been taken by the federal authorities, requested a sentencing hearing on June 30, 2006. A handwritten note affixed to the request, presumably by someone in the clerk's or judge's office, stated that the federal authorities had taken custody of Mr. Roesch and he had not yet been returned. The sentencing was not scheduled at that time.

[¶ 18] At a hearing on July 6, 2006, the federal judge inquired about the status of Mr. Roesch's state court charges:

THE COURT: Is this your—is your client here on a writ?

---

3. Mr. Roesch argued, in the district court, that the IAD applied to his case. He does not, how-

ever, present an appellate argument based upon the IAD.

[DEFENSE COUNSEL]: Yes, Your Honor. He was being held in the Laramie County Detention Center for some state charges.

THE COURT: Was he scheduled to go to the penitentiary or was he staying there in Laramie County?

[DEFENSE COUNSEL]: Your Honor, at the time he was picked up by the marshals, he was scheduled for sentencing the day he was picked up, and he would have been sentenced to the penitentiary at that time.

THE COURT: So we need to—we should have given the state court judge the opportunity to complete his sentencing? Did we frustrate the state judge in his ability to sentence this defendant?

[ASSISTANT U.S. ATTORNEY]: Your Honor, my understanding is "no." We waited until we had clearance from the state people before we actually brought the defendant over. We did it with permission.

THE COURT: All right. But he still hasn't been sentenced.

[¶ 19] The federal docket sheet shows that Mr. Roesch was subsequently ordered to be evaluated as to his mental and physical health. In addition, despite having apparently entered into a plea agreement with the United States, Mr. Roesch began filing numerous motions, some *pro se*. At a status conference on February 7, 2007, the federal court judge ordered defense counsel to expedite the evaluation process so that a competency determination could be made. In its minute entry, the federal court found "the delay in this case has been attributable to the defense, not plaintiff."

[¶ 20] Mr. Roesch filed a *pro se* motion to dismiss his sentencing in state court on June 19, 2007, claiming that justice would not be frustrated by a dismissal because his federal sentence was to run concurrent with any sentence imposed by the state court and he was unlikely to survive either sentence.[4] The State did not respond to his motion at

that time, and the state district court did not rule on it until later.

[¶ 21] After ruling that Mr. Roesch was competent to stand trial, the federal court held a change of plea hearing on July 18, 2007, at which Mr. Roesch pleaded guilty to both counts of the indictment. He was sentenced in federal court on October 19, 2007. The federal court docket sheet indicates that the Writ of Habeas Corpus Ad Prosequendum was returned executed on April 28, 2006, and October 23, 2007.

[¶ 22] Shortly after Mr. Roesch was sentenced in federal court, he was returned to state court and proceedings on his state charges resumed. The State replied to Mr. Roesch's motion to dismiss sentencing, and the district court held a hearing on the motion. At the hearing, the prosecutor represented that she had kept up with Mr. Roesch's federal court status by e-mailing the Assistant U.S. Attorney. The district court ultimately denied the motion to dismiss, and Mr. Roesch was finally sentenced on December 3, 2007.

[¶ 23] We conclude that the State met its burden of presenting facts and circumstances to establish a valid excuse for the delay in sentencing Mr. Roesch and that reason is clear in the record. The federal authorities lawfully took custody of Mr. Roesch pursuant to the writ. There is no indication in the record that the federal government held him any longer than was allowed under the terms of the writ. According to the federal court, the delays in Mr. Roesch's case were attributable to the defense. Obviously, the federal court delays also caused a delay in sentencing Mr. Roesch in state court. When delays in sentencing are caused by the defendant, we have held that they are excusable. *Schade*, ¶ 15, 53 P.3d at 558. Once Mr. Roesch was back in state custody, the State acted with dispatch to conclude his sentencing.

[¶ 24] On a related note, the federal court's decision in *United States v. Schreane*, 331 F.3d 548, 553–55 (6th Cir.2003) is instructive, although it involved a claim of violation of the constitutional right to a speedy

4. Mr. Roesch had apparently been diagnosed with advanced cancer of the thyroid and his prognosis was not good.

trial. The appellant claimed his right to a speedy trial was violated by a delay in bringing him to trial on federal charges. The court concluded that the delay was justified because it was caused by the defendant's prosecution in state court.

> The first delay in this case was approximately fifteen and one-half months, and it spanned from July 28, 1998, when a federal grand jury returned an indictment, to November 9, 1999, when Schreane was sentenced in state court. This delay was due to the obvious need to allow the defendant to be prosecuted by the State without interference by the federal government. "When a defendant violates the laws of several different sovereigns, as was the case here, at least one sovereign, and perhaps more, will have to wait its turn at the prosecutorial turnstile." *Grimmond*, 137 F.3d at 828. Customarily-although certainly not always-the jurisdiction with custody of the accused, in this case the State of Tennessee, is afforded the first opportunity to prosecute the defendant. This longstanding practice is rooted in the respect accorded to a custodial sovereign to resolve its criminal proceedings before relinquishing custody to another jurisdiction. This practice also can be understood in terms of the orderly and efficient prosecution of cases in our dual system of criminal justice.

*Id.* at 554–55. Although *Schreane* involved the more common situation where prosecution in a second jurisdiction must wait until the original jurisdiction has finalized its criminal prosecution of a defendant, that case properly recognized that a defendant, not the government, should bear the burden of the delay when he violates the laws of multiple jurisdictions.[5]

[¶ 25] Based on the entire course of proceedings here, we conclude that the State has offered sufficient facts and circumstances to explain the delay and it was not unreasonable for the district court to sentence Mr. Roesch after he was returned by federal authorities. This case is very different from the circumstances where we ruled that the sentences were void because the district court violated the defendants' rights to a speedy sentencing. In *Yates*, 792 P.2d at 190–92, the district court had attempted to use a Wyo. Stat. Ann. § 7–13–302 (Michie 1987) sentence deferral on one of several counts and, accordingly, had delayed the imposition of sentence on the deferred count for more than a decade. Applying the newly adopted rule, this Court concluded that the district court's decision to suspend imposition of sentence for more than ten years was unreasonable. *Id.* In *Daugherty*, ¶ 35, 44 P.3d at 39, the district court deferred sentencing on one of two counts for an undetermined amount of time, without stating its reasons for doing so. After revoking Daugherty's probation on the first count, the district court proceeded to sentence him on the second count. The sentencing took place three years after guilt had been established. *Id.* ¶ 41, 44 P.3d at 40. We ruled that the delay was unreasonable. *Id.* ¶ 44, 44 P.3d at 40–41.

█ [¶ 26] Because the sentences in *Yates* and *Daugherty* were imposed after the defendants engaged in subsequent bad conduct, this Court was concerned that their due process rights had been violated because they were subjected to greater punishment than if they had been sentenced in a timely fashion. As we stated earlier, the purpose of the rule requiring timely sentencing is to prevent the possibility that a greater punishment than is deserved will be imposed based upon conduct occurring after the finding of guilt but prior to sentencing. The rule requiring speedy sentencing also ensures that memory problems will not improperly affect the sentencing. The sentences in this case were consistent with the plea agreement. Thus, there is no concern that Mr. Roesch's state sentences were affected by the delay. The district court did not abuse its discretion by sentencing Mr. Roesch for his state crimes or by denying his motion to dismiss sentencing.

[¶ 27] Affirmed.

---

5. Obviously, as recognized by the federal judge, it is preferable if the second jurisdiction (in this case the federal government) waits until the first jurisdiction (the state government) has concluded its proceedings before taking custody of the defendant.