# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 136

OCTOBER TERM, A.D. 2020

October 28, 2020

RONALD WAYNE CREBS III,

Appellant
(Defendant),

v.

S-20-0059

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General. Argument by Mr. Zintak.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   On October 2, 2017, Ronald Wayne Crebs III was arrested and detained in Natrona County for the October 1, 2017 theft of a Honda Civic.  While he was detained in Natrona County, Fremont County filed charges against him for the theft of a Toyota Sequoia.  Although Fremont County filed an Information, it did not pursue further prosecution on these charges for 481 days—during which time, Mr. Crebs was convicted in Natrona County and was serving a four to seven-year prison sentence.  Fremont County did file a detainer against Mr. Crebs while he was in Natrona County custody.  Mr. Crebs filed two *pro se* motions from prison, including a Motion to Dismiss for lack of a speedy trial.[1]  On September 26, 2019, Mr. Crebs, now represented by counsel, filed a second Motion to Dismiss the Fremont County charges based on speedy trial violations.  After a hearing, the district court denied the motion.  Mr. Crebs entered into a conditional guilty plea agreement, reserving the speedy trial issue.  Mr. Crebs appeals.  We affirm.

## *ISSUE*

[¶2]   Was Mr. Crebs denied his constitutional right to speedy trial?

## *FACTS*

### A.   Factual Background

[¶3]   The facts are not in dispute.  On October 1, 2017, the Casper Police Department responded to a report of a burglary at Big Dawg Auto.  When the caller arrived at work, she found a pried-open door and open window.  She reported the theft of a 2003 silver Honda Civic and multiple temporary vehicle registrations.

[¶4]   On October 2, 2017, the Fremont County Sheriff's Office received a report of a stolen Toyota Sequoia.  Officers then sighted the Toyota Sequoia in Fremont County, and, after a high-speed chase, stopped it in Natrona County.  The driver, Mr. Crebs, was arrested and transported to the Natrona County Detention Center.  Mr. Crebs admitted to stealing the Honda Civic and the Toyota Sequoia.

### B.   Procedural Background

[¶5]   On October 4, 2017, Natrona County charged Mr. Crebs with burglary and wrongful taking or disposing of property related to the Honda Civic.  Mr. Crebs was not able to post bond and remained in jail until his conviction and sentencing.

---

[1] The district court did not rule on Mr. Crebs's *pro se* motion.

[¶6]    On December 7, 2017, while Mr. Crebs was in jail awaiting trial in Natrona County, Fremont County[2] filed an Information charging him with seven offenses connected to the theft of the Toyota Sequoia.  It obtained a warrant for Mr. Crebs's arrest but did not execute the warrant.  Instead, the prosecutor lodged a detainer to ensure that Mr. Crebs would not be released from jail unless Fremont County was notified and had an opportunity to execute the arrest warrant.[3]  Fremont County took no further action in this matter until 2019.

[¶7]    After roughly eight months in jail, Mr. Crebs entered into a plea agreement on the Natrona County charges.  The Natrona County district court sentenced Mr. Crebs to four to seven years in prison, with credit for 151 days served.  The Judgment and Sentence was filed May 29, 2018, and Mr. Crebs was transferred to the Wyoming Medium Correctional Institution (WMCI).

[¶8]    Months later, on February 4, 2019, Mr. Crebs mailed a *pro se* "Notice of Place of Confinement and Motion for Final Disposition" (Motion for Final Disposition) to Fremont County.  This motion, filed February 11, 2019, stated that Mr. Crebs was being held at WMCI.  Mr. Crebs requested a telephone hearing and asked Fremont County to proceed with its charges.  Mr. Crebs also requested court-appointed counsel.  After receiving no response to his Motion for Final Disposition, Mr. Crebs filed a *pro se* Motion to Dismiss on April 1, 2019, asserting a violation of his right to a speedy trial. One day later, Fremont County responded to the motion and an initial appearance was set for June 10, 2019.

[¶9]    Mr. Crebs attended this hearing by telephone.  The hearing was continued to July 17, 2019, to allow him to obtain counsel.  Mr. Crebs, with counsel, appeared by phone at the July 17, 2019 hearing.  At that time, he again raised his right to a speedy trial and requested that he be allowed to appear in person.  The court continued the hearing to accommodate an in-person appearance and entered an order for transport.

[¶10] Following the rescheduled initial appearance on August 7, 2019, and the preliminary hearing on August 21, 2019, Mr. Crebs was bound over to district court.  The district court set Mr. Crebs's video arraignment for September 12, 2019, but because of technical issues, the arraignment was continued to September 19, 2019.  At the rescheduled arraignment, Mr. Crebs renewed his speedy trial claim and pleaded not guilty.  Trial was set for January 13, 2020, with an expedited briefing schedule.

---

[2] When referring to the prosecuting body, we commonly use "the State."  Here, to distinguish between the two prosecuting bodies, we sometimes refer to the State as "Fremont County" or "Natrona County."

[3] A detainer is a notification filed with an institution where a prisoner is incarcerated, advising that he faces pending criminal charges in another jurisdiction.  *Odhinn v. State*, 2003 WY 169, ¶ 4, 82 P.3d 715, 717 n.1 (Wyo. 2003).

[¶11]  Mr. Crebs filed a Motion to Dismiss on September 26, 2019, arguing violation of his right to speedy trial under the United States and Wyoming constitutions.  The State responded, and the district court heard Mr. Crebs's motion on October 15, 2019.  On November 15, 2019, the district court entered an order denying Mr. Crebs's Motion to Dismiss.

[¶12]  On January 7, 2020, Mr. Crebs pled guilty to felony theft pursuant to a conditional plea agreement.  He reserved his right to appeal the issue of speedy trial.  He was sentenced to three to five years imprisonment, suspended in favor of three years probation upon completion of his Natrona County sentence, with no credit for time served.  Mr. Crebs timely appealed.

## STANDARD OF REVIEW

[¶13]  On appeal, Mr. Crebs argues the State violated his right to a speedy trial under the United States and Wyoming constitutions.  "We examine de novo the constitutional question of whether a defendant has been denied a speedy trial in violation of the Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution."[4]  *Humphrey v. State*, 2008 WY 67, ¶ 18, 185 P.3d 1236, 1243 (Wyo. 2008).

## DISCUSSION

[¶14]  When analyzing a constitutional speedy trial claim under the United States Constitution, we look at the four factors established by the United States Supreme Court in *Barker v. Wingo*: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant." *Webb v. State*, 2017 WY 108, ¶ 15, 401 P.3d 914, 921–22 (Wyo. 2017) (quoting *Rhodes v. State*, 2015 WY 60, ¶ 17, 348 P.3d 404, 410 (Wyo. 2015)).  We conduct the *Barker* analysis to

---

[4] Mr. Crebs references the Wyoming Constitution but provides no legal analysis as to its application here. State constitutions provide "protections often extending beyond those required by the Supreme Court's interpretation of federal law." *Sheesley v. State*, 2019 WY 32, ¶ 14, 437 P.3d 830, 836 (Wyo. 2019) (quoting William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489, 491 (1977)).  While we are "willing to independently interpret the provisions of the Wyoming Constitution," *Sheesley*, ¶ 14, 437 P.3d at 836 (quoting *Saldana v. State*, 846 P.2d 604, 624 (Wyo. 1993)), the protections it affords are "separate and independent" from those contained in the U.S. Constitution. *Sheesley*, ¶ 14, 437 P.3d at 836 (quoting *O'Boyle v. State*, 2005 WY 83, ¶ 23, 117 P.3d 401, 408 (Wyo. 2005)).  "General citation to the Wyoming Constitution does not suffice to preserve a state constitutional argument for appeal, nor does citation to cases decided under the Wyoming Constitution without argument concerning how they apply to the case under consideration." *Gibson v. State*, 2019 WY 40, ¶ 13, 438 P.3d 1256, 1259 (Wyo. 2019) (discussing constitutional search and seizure provisions (citation omitted)).  For these reasons, we decline to separately analyze Mr. Crebs's speedy trial claim under the Wyoming Constitution.  Mr. Crebs does not raise a W.R.Cr.P. 48 speedy trial violation.

determine the ultimate question of "whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial." *Berry v. State*, 2004 WY 81, ¶ 31, 93 P.3d 222, 231 (Wyo. 2004) (citation omitted). Under our analysis, "[n]o single factor is dispositive. Instead, we consider the factors together and balanced in relation to all relevant circumstances. The State has the burden to prove delays in bringing the defendant to trial are reasonable and necessary." *Fairbourn v. State*, 2020 WY 73, ¶ 42, 465 P.3d 413, 425 (Wyo. 2020) (quoting *Mathewson v. State*, 2019 WY 36, ¶ 57, 438 P.3d 189, 209 (Wyo. 2019) (internal citations and quotation marks omitted)).

## A.    Length of Delay

[¶15]  We turn first to the length of the delay. "[T]his Court has never held that a specific length of delay is sufficient to constitute an automatic speedy trial violation." *Webb*, ¶ 16, 401 P.3d at 922 (citing *Mascarenas v. State*, 2013 WY 163, ¶ 12, 315 P.3d 656, 661 (Wyo. 2013)). However, the length of the delay is a threshold consideration that determines whether analysis of the remaining *Barker* factors is necessary. *Id.*

[¶16]  The parties contest when Mr. Crebs's speedy trial right arose. Mr. Crebs contends the relevant date is October 2, 2017, when he was arrested and charged in Natrona County for the crimes committed there. The State submits the speedy trial calculation began on December 7, 2017, when Mr. Crebs was charged with the Fremont County crimes.

[¶17]  Generally, "the [constitutional] 'speedy trial clock begins to run at the time of arrest, information, or indictment, whichever occurs first.'" *Webb*, ¶ 15, 401 P.3d at 921 (quoting *Rhodes*, ¶ 17, 348 P.3d at 411). This computation includes "the periods of formal charge by a single sovereign for the same criminal act[.]" *Id.* (citation omitted). Once the right to speedy trial has attached, it "continues until the defendant is convicted, acquitted or a formal entry is made on the record of his case that he is no longer under indictment." *Berry*, ¶ 32, 93 P.3d at 231 (quoting Wayne R. LaFave et al., *Criminal Procedure* § 18.1(c), at 670 (3d ed. 1999)).

[¶18]  Mr. Crebs was first charged in Fremont County on December 7, 2017. The earlier Natrona County arrest was unrelated to the Fremont County charges. We find that the speedy trial clock in this case started on December 7, 2017. From December 7, 2017, to the January 7, 2020 Fremont County plea agreement, 761 days elapsed. *Potter v. State*, 2007 WY 83, ¶ 32, 158 P.3d 656, 664 (Wyo. 2007) (calculating speedy trial clock from time of arrest to plea agreement); *Sisneros v. State*, 2005 WY 139, ¶ 19, 121 P.3d 790, 797 (Wyo. 2005) (calculating speedy trial clock from arrest to entry of conditional guilty plea). This delay is significant enough to trigger the remaining *Barker* factors. *See Webb*, ¶ 16, 401 P.3d at 922 ("Delays approaching one year will generally trigger consideration of" all the *Barker* factors.).

**B. Reason for Delay**

[¶19] The second *Barker* factor requires us to consider the reason for the delay and which party was responsible. *Ortiz v. State*, 2014 WY 60, ¶ 42, 326 P.3d 883, 893 (Wyo. 2014) (citation omitted). "We weigh the delays caused by the State against those caused by the defendant, keeping in mind it is the State's burden to bring a defendant to trial in a timely manner and it must show that the delays were reasonable and necessary." *Mathewson*, ¶ 59, 438 P.3d at 210 (quoting *Durkee v. State*, 2015 WY 123, ¶ 16, 357 P.3d 1106, 1112 (Wyo. 2015)). "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Boucher v. State*, 2011 WY 2, ¶ 13, 245 P.3d 342, 350 (Wyo. 2011) (quoting *Wehr v. State*, 841 P.2d 104, 112–13 (Wyo. 1992) (quoting *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972))).

[¶20] The analysis here may be separated into four categories evaluating: (1) the time preceding Mr. Crebs's Natrona County conviction and sentencing; (2) the time between Mr. Crebs's Natrona County sentence and the time Fremont County began to actively prosecute its charges; (3) the remaining time until resolution of the case; and (4) the reasons for delay.

[¶21] We address the analysis sequentially.

**1. The Time Preceding Mr. Crebs's Natrona County Conviction and Sentencing**

[¶22] This 173-day period began December 7, 2017, when Fremont County filed charges, and ran to May 29, 2018, when Mr. Crebs was convicted and sentenced in Natrona County. The State asserts this period should not be weighed against it because it resulted from the prosecution of Mr. Crebs in another county.

[¶23] The district court found that this delay was caused by "the ordinary course of the criminal justice process addressing alleged criminal conduct in multiple jurisdictions and [at] different times." Mr. Crebs counters that Fremont County and Natrona County are the "same" sovereign and Fremont County had a duty to prosecute him concurrently.[5] He

---

[5] Mr. Crebs suggests Fremont County could have used a writ of *habeas corpus ad prosequendum* to initiate prosecution. A writ *habeas corpus ad prosequendum* is a writ "used in criminal cases to bring a prisoner before the court to be tried on charges other than those for which he is currently confined." *Turner v. State*, 2015 WY 29, ¶ 7, 343 P.3d 801, 804 n.4 (Wyo. 2015) (citing *habeas corpus ad prosequendum*, *Black's Law Dictionary* (10th ed. 2014)). Mr. Crebs cites no authority requiring the State to take such action. This argument is theoretical and does not inform our analysis of the *Barker* factors. *See Roesch v. State*, 2008 WY 141, ¶ 14, 196 P.3d 795, 799 (Wyo. 2008) (discussing appellant's

cites Wyo. Stat. Ann. § 7-1-106(b), which provides, "All prosecutions shall be carried on in the name and by the authority of the [S]tate of Wyoming and shall conclude 'against the peace and dignity of the [S]tate of Wyoming.'"

[¶24] Mr. Crebs possesses a constitutional right to "a speedy trial by an impartial jury **of the county or district in which the offense is alleged to have been committed**." Wyo. Const. art. 1, § 10 (emphasis added); *see also* W.R.Cr.P. 18; Wyo. Stat. Ann. § 1-7-102(a) (LexisNexis 2019) ("Every criminal case shall be tried in the county in which the indictment or offense charged is found, except as otherwise provided by law."). Mr. Crebs does not provide authority to support his claim that multiple criminal charges in separate counties must be prosecuted concurrently or simultaneously. We find the reasoning applicable to multiple charges in separate jurisdictions persuasive to Mr. Crebs's situation of multiple charges in separate locales. We addressed this argument in *Roesch*. There, Mr. Roesch claimed a violation of his right to speedy sentencing. *Roesch v. State*, 2008 WY 141, ¶ 4, 196 P.3d 795, 796–97 (Wyo. 2008). We held that Mr. Roesch's transfer to federal custody and delays in the federal case provided the State with a "valid excuse" for the delay in retrieving Mr. Roesch for sentencing. *Id.* ¶ 23, 196 P.3d at 800.

[¶25] In reaching that conclusion, we relied on *United States v. Schreane*, 331 F.3d 548, 553–55 (6th Cir. 2003). In *Schreane*, the appellant faced state and federal charges. *Id.* at 552. His federal trial was delayed pending resolution of state charges. *Id.* He claimed his constitutional right to speedy trial was violated by the delay of the federal trial. *Id.* at 552–53. The court concluded that the delay in the federal case was caused by the appellant's prosecution in state court, and was justified "due to the obvious need to allow the defendant to be prosecuted by the State without interference by the federal government." *Roesch*, ¶ 24, 196 P.3d at 801 (quoting *Schreane*, 331 F.3d at 554). It noted, "[w]hen a defendant violates the laws of several different sovereigns, as was the case here, at least one sovereign, and perhaps more, will have to wait its turn at the prosecutorial turnstile." *Id.* (quoting *Schreane*, 331 F.3d at 554 (quoting *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1988))). The *Schreane* court further remarked: "This longstanding practice is rooted in the respect accorded to a custodial sovereign to resolve its criminal proceedings before relinquishing custody to another jurisdiction. This practice also can be understood in terms of the orderly and efficient prosecution of cases in our dual system of criminal justice." *Schreane*, 331 F.3d at 555.

[¶26] Here, Mr. Crebs committed different crimes, on different dates, in different counties. Although this case does not involve different jurisdictions, the logic is the same where Wyoming's Constitution and the Wyoming Rules of Criminal Procedure provide a

---

argument that the State should have filed a request for a writ of *habeas corpus ad prosequendum* to prevent sentencing delay).

6

right to trial in the county where the offense is alleged to have been committed. Wyo. Const. art. 1, § 10; W.R.Cr.P. 18. Mr. Crebs was arrested and detained in Natrona County, which was afforded the first opportunity to prosecute him. "Customarily—although certainly not always—the jurisdiction with custody of the accused . . . is afforded the first opportunity to prosecute the defendant." *Roesch*, ¶ 24, 196 P.3d at 801 (quoting *Schreane*, 331 F.3d at 554–55); *see also United States v. Medina*, 918 F.3d 774, 780 (10th Cir. 2019) ("Deferring a defendant's federal arraignment to allow another sovereign to conclude its prosecution" is, in most circumstances, "a permissible reason for delay" in post-indictment proceedings, on a speedy trial claim under the Sixth Amendment.), *cert. denied*, 139 S.Ct. 2706, 204 L.Ed.2d 1101 (2019). It is uncontroverted that "a defendant, not the government, should bear the burden of the delay when he violates the laws of multiple jurisdictions." *Roesch*, ¶ 24, 196 P.3d at 801 (footnote omitted); *State v. Younge*, 2013 UT 71, ¶ 21, 321 P.3d 1127, 1134 ("Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay." (citation omitted)); *State v. Brekke*, 2017 MT 81, ¶ 15, 392 P.3d 570, 573 ("Defendant's imprisonment in another state, based upon defendant's own conduct, should be attributed to him in a speedy trial analysis." (citation omitted)). Mr. Crebs violated the laws in multiple counties and bears the burden of the delay caused by his prosecution in another county.

### 2. The Time Between Mr. Crebs's Natrona County Sentence and the Time Fremont County Began to Actively Prosecute Its Charges

[¶27] The second period of 308 days began on May 29, 2018—after Mr. Crebs was convicted and sentenced in Natrona County—and ended on April 2, 2019—when Fremont County began to actively prosecute its charges. We address this delay in two parts.

### a. May 29, 2018–February 11, 2019—the Time Between the Natrona County Conviction and Mr. Crebs's Motion for Final Disposition

[¶28] The first part of this 308-day period begins with Mr. Crebs's Natrona County sentence and runs to the filing of his *pro se* Motion for Final Disposition in Fremont County. This part totaled 258 days.

[¶29] Fremont County relied on the detainer as a means of notification for when it could proceed with Mr. Crebs's prosecution. "Although the government may have reasonably expected that the State would promptly notify it of the defendant's availability, when the government failed to receive any notice after the passage of a considerable period of time, reasonable diligence requires the government to follow-up on the matter." *Schreane*, 331 F.3d at 556; *see also Payne v. Rees*, 738 F.2d 118, 122–23 (6th Cir. 1984) (finding that a jurisdiction has the responsibility to "mov[e] toward a reasonably prompt disposition of [an] indictment" even "where a defendant is incarcerated in another

jurisdiction on pending charges"). Mr. Crebs was never released from custody and instead was transferred to WMCI. Under these circumstances, the detainer was not triggered, and Fremont County was unaware of the resolution of the Natrona County proceedings. Nonetheless, after the passage of considerable time, Fremont County had a responsibility to follow up on Mr. Crebs's status.

[¶30] We have consistently recognized that "a defendant has no duty to bring himself to trial." *Berry*, ¶ 31, 93 P.3d at 231 (citing *Harvey v. State*, 774 P.2d 87, 96 (Wyo. 1989)). The State concedes this period of delay weighs against it, but that "it was in no way attributable to any deliberate attempt to delay the trial." While the State failed to keep itself apprised of Mr. Crebs's status, we find no evidence in the record of an intentional attempt to prolong the prosecution. *See Lafferty v. State*, 2016 WY 52, ¶ 68, 374 P.3d 1244, 1255 (Wyo. 2016) (no evidence of "deliberate attempts to delay the trial in order to hamper the defense"). This part of the delay is a close balance but weighs against the State.

### b. February 11, 2019–April 2, 2019—the Time Between the Motion for Final Disposition and Initiation of Proceedings in Fremont County

[¶31] The next part of this 308-day time frame covers the fifty days between Fremont County's failure to respond to Mr. Crebs's Motion for Final Disposition and its request for a hearing. Fremont County offers little explanation for its failure to respond. It suggests it "was under no mandate to comply with Crebs's demand to address the charges immediately."

[¶32] The United States Supreme Court has made clear that "on demand a State ha[s] a duty to make a diligent and good-faith effort to secure the presence of the accused from the custodial jurisdiction and afford him a trial."[6] *Dickey v. Florida*, 398 U.S. 30, 37, 90 S.Ct. 1564, 1568, 26 L.Ed.2d 26 (1970); *see also Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) (holding the State had a constitutional duty, upon request of federal prisoner that he be brought to trial on a state charge, to make a diligent, good-faith effort to bring him before state court for trial). Fremont County failed to respond to Mr. Crebs until he filed his Motion to Dismiss on April 1, 2019. The responsibility must be laid at the doorstep "of the county and court officials and officers who were charged with expeditiously processing criminal defendants in the courts." *Cherniwchan v. State*, 594 P.2d 464, 468–69 (Wyo. 1979). This fifty-day period weighs against the State.

### 3. The Remaining Time Until Resolution of the Case

---

[6] In *State v. Keefe*, **a pre-*Barker* case**, we held that speedy trial guarantees apply equally to those incarcerated on other charges. *State v. Keefe*, 17 Wyo. 227, 98 P. 122, 131–32 (1908).

8

[¶33] The final period—April 2, 2019, to January 7, 2020—lasted 280 days and is attributable to criminal case processes, court schedules, and continuances. *See supra* ¶¶ 9–12. Fifty-eight days of this delay resulted from Mr. Crebs's requests for continuances. Mr. Crebs asked for his initial appearance to be continued to allow him to acquire court-appointed counsel, and the district court granted the continuance. He then asked for the rescheduled hearing to be continued so that he could appear in person, which request was also granted.[7] *See supra* ¶ 9. The remainder of this period resulted from the case's natural progression through the criminal justice system.

[¶34] The delays associated with Mr. Crebs's requests for continuances totaled fifty-eight days. Generally, "[d]elays assigned to the defendant include 'delays attributable to changes in defense counsel, to the defendant's requests for continuances, and to the defendant's pretrial motions.'" *Castellanos v. State*, 2016 WY 11, ¶ 73, 366 P.3d 1279, 1300 (Wyo. 2016) (quoting *Durkee*, ¶ 16, 357 P.3d at 1112). Here, the delays were reasonable, legitimate, and the result of protecting Mr. Crebs's constitutional guarantees to defend in person and by counsel. *See DeMillard v. State*, 2008 WY 93, ¶ 9, 190 P.3d 128, 130 (Wyo. 2008) ("A criminal defendant has the right to be present during every critical stage of his criminal proceeding."); *Rodriguez v. State*, 2010 WY 61, ¶ 21, 230 P.3d 1111, 1115 (Wyo. 2010) ("An individual's right to counsel is such a basic right that its denial can never be treated as harmless error." (citation omitted)). These delays reflect Mr. Crebs's requests for initial appointment of counsel—not a "change in defense counsel"—and his petition to appear in person for critical stages of his criminal proceedings. *See Humphrey*, ¶ 23, 185 P.3d at 1244 ("a valid reason . . . should serve to justify appropriate delay" (quoting *Whitney v. State*, 2004 WY 118, ¶ 42, 99 P.3d 457, 471 (Wyo. 2004))); *Zehrlaut v. State*, 102 N.E.2d 203, 207 (Ind. 1951) (finding delay caused by defendant's motion was not weighed against him when it was an "essential part of the procedural law of the state in criminal cases," and reasonably contemplated in a criminal trial). The record contains no evidence Mr. Crebs employed dilatory tactics or uncooperative behavior. This fifty-eight-day delay is neutral.

[¶35] The other 222 days in this period were related to the realities of case progression. Delays caused by "overcrowded courts and their schedules are more neutral reasons for delay, and should not be weighed as heavily against the State." *Webb*, ¶ 17, 401 P.3d at 922. Nevertheless, these types of delays "should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Durkee*, ¶ 16, 357 P.3d at 1112 (quoting *Berry*, ¶ 36, 93 P.3d at 232). Overall, this 280-day delay weighs in Mr. Crebs's favor. *See Lafferty*, ¶ 68, 374 P.3d at 1255.

---

[7] The first continuance delayed the hearing from June 10, 2019, to July 17, 2019—a thirty-seven-day delay—and the second delayed the hearing from July 17, 2019, to August 7, 2019—a twenty-one-day delay.

### 4. The Reasons for Delay

[¶36] On balance, the 761-day delay weighs against the State, though not heavily. One hundred seventy-three days weigh against Mr. Crebs due to his violation of laws in multiple counties. Three hundred eight days are attributable to the State, largely due to its negligence in monitoring Mr. Crebs's status in Natrona County. Two hundred eighty days, encompassing the time for the matter to proceed to a plea agreement, weigh slightly against the State.

## C.    Assertion of Right

[¶37] The third *Barker* factor requires us to consider Mr. Crebs's assertion of his right to speedy trial. "Although a defendant is not required to assert his right to a speedy trial, the vigor with which the defendant asserted his right is an important consideration in determining the reasonableness of any delay." *Griggs v. State*, 2016 WY 16, ¶ 68, 367 P.3d 1108, 1130 (Wyo. 2016) (citation omitted); *see also Ortiz*, ¶ 52, 326 P.3d at 895. Where a defendant consistently asserts his right, this factor weighs heavily in favor of the defendant. *Berry*, ¶ 45, 93 P.3d at 236; *Campbell v. State*, 999 P.2d 649, 656 (Wyo. 2000).

[¶38] Mr. Crebs first notified Fremont County of his whereabouts on February 4, 2019, and asked for final disposition of his charges. Upon receiving no response, Mr. Crebs filed a *pro se* Motion to Dismiss based on the lack of speedy trial. Mr. Crebs continued to assert his speedy trial right at his July 17, 2019 Initial Appearance, his September 19, 2019 Arraignment, his September 26, 2019 Motion to Dismiss, and again at the October 15, 2019 hearing. This factor weighs in favor of Mr. Crebs.

## D.    Prejudice

[¶39] The final *Barker* factor directs us to consider whether the defendant was prejudiced by the delay. Mr. Crebs argues the extraordinary length of delay entitles him to a presumption of prejudice. In the alternative, he argues even if we fail to find he was presumptively prejudiced, he suffered actual prejudice.

### 1. Presumptive Prejudice

[¶40] Mr. Crebs contends the length of the delay caused him to be presumptively prejudiced. He relies on *Berry*, where we stated, "In the case of excessive delay, . . . prejudice should be presumed." *Berry*, ¶ 46, 93 P.3d at 237.

[¶41] "Presumed prejudice" has a dual meaning. "Presumptive prejudice" initially refers to the threshold determination of whether the pretrial delay is long enough to

trigger consideration of the *Barker* factors. "[A]s the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Durkee*, ¶ 13, 357 P.3d at 1111 n.2 (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 2691 n.1, 120 L.Ed.2d 520 (1992)); *Berry*, ¶ 32, 93 P.3d at 231 ("[W]hen the delay is so protracted as to be presumptively prejudicial, inquiry into the other factors is required.").

[¶42]  The other meaning of presumed prejudice and the presumed prejudice doctrine Mr. Crebs alludes to arises from the seminal case of *Doggett v. United States*.  In *Doggett*, the United States Supreme Court considered a speedy trial claim involving an "extraordinary" eight and one-half-year delay. *Doggett*, 505 U.S. at 657–58, 112 S.Ct. at 2694.  The court found the government was inexcusably negligent when, "[f]or six years, [its] investigators made no serious effort" to locate and prosecute the defendant.  *Id.* at 652, 112 S.Ct. at 2691.  It held that the pretrial delay was egregious enough to presumptively prejudice the defendant under the fourth *Barker* factor, despite the lack of an "affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence."  *Id.* at 655, 112 S.Ct. at 2692.  The court explained:

> When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review . . . and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence . . . nor persuasively rebutted, the defendant is entitled to relief.

*Id.* at 658, 112 S.Ct. at 2694 (footnotes omitted) (citations omitted).

[¶43]  Forty years ago, we asked the question, "how long must prosecution be delayed before courts are warranted in assuming prejudice?" *Cherniwchan*, 594 P.2d at 469.  Our response remains applicable today: "There are as many answers as there are courts that have attempted to answer this question." *Id.*  Compare, *e.g.*, *United States v. Ferreira*, 665 F.3d 701, 706 (6th Cir. 2011) (presumed prejudice where three-year delay and government "grossly negligent"); *United States v. Erenas-Luna*, 560 F.3d 772, 780 (8th Cir. 2009) (presumed prejudice where three-year delay and "serious negligence"); *United States v. Ingram*, 446 F.3d 1332, 1339 (11th Cir. 2006) (presumed prejudice where two-year delay and "egregious" government negligence); *Vance v. State*, 2012 WY 83, ¶¶ 14–17, 278 P.3d 254, 258 (Wyo. 2012) (presumed prejudice where six-year delay and State made "no attempt" to prosecute); *with Kurtenbach v. State*, 2008 WY 109, ¶¶ 7–9, 192 P.3d 973, 977–78 (Wyo. 2008) (no presumed prejudice where seventeen-month delay and "simple" negligence in failing to upload warrant); *Brown v. Romanowski*, 845 F.3d 703, 717 (6th Cir. 2017) (no presumed prejudice where two-year delay, "the state was

negligent at most," and defendant not incarcerated during the delay); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (no presumed prejudice where three and five-month delays in cases but government only negligent and no "evidence of affirmative misconduct"); *State v. Longhorn*, 2002 MT 135, ¶¶ 29–31, 49 P.3d 48, 54 (no presumed prejudice where six-year delay and state made "a diligent good faith effort" to find defendant), *overruled on other grounds by Giambra v. Kelsey*, 2007 MT 158, ¶¶ 29–31, 162 P.3d 134, 140–41. Courts interpreting *Doggett* "generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years," *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) (collecting cases), except where the government was responsible for the delay by virtue of something beyond simple negligence. *See Barker*, 407 U.S. at 521, 92 S.Ct. at 2187 ("[T]he right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate."). In other words, each case must be decided on its facts in light of the *Barker* factors.

[¶44] Here, Mr. Crebs's pretrial incarceration was significant but it did not extend the time of incarceration under the Fremont County charges, and the reasons for unwarranted delay were caused by negligence, not misconduct. The length of delay falls short of the egregious delay contemplated in *Doggett*. We conclude Mr. Crebs was not presumptively prejudiced.

## 2. Actual Prejudice

[¶45] In the absence of presumed prejudice, we turn to actual prejudice. Like presumptive prejudice, actual prejudice should be assessed in the light of the "interests that the speedy trial right was designed to protect[.]" *Tate v. State*, 2016 WY 102, ¶ 39, 382 P.3d 762, 770 (Wyo. 2016). The interests that the speedy trial right was designed to protect are: (1) prevention of oppressive pretrial incarceration; (2) minimization of the accused's anxiety and concern; and (3) minimization of the possibility that a delay will hinder the defense. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. The defendant bears the burden "to demonstrate and substantiate" he was prejudiced by the delay. *Fairbourn*, ¶ 57, 465 P.3d at 427 (citation omitted).

[¶46] Mr. Crebs contends he suffered "concrete prejudices" by "missing out on available resources provided to inmates in Wyoming Department of Corrections' custody." He claims this delay limited the substance abuse treatments available to him, and he could not participate in other programs intended to help him succeed on his release. Additionally, he believes he was not transferred to a minimum-security facility as quickly as he would have been had the State not delayed the prosecution of this matter. Mr. Crebs fails to produce any admissible evidence or testimony that he was in fact eligible

for, but denied access to, treatment programs. He, likewise, does not substantiate his claim that he was eligible for transfer to a minimum-security facility.

[¶47] Mr. Crebs does not argue that he suffered lengthy pretrial incarceration or that his defense was impaired. He does claim the delay caused him pretrial anxiety, asserting he spent the delay "waiting and not knowing how his charges in Fremont County, Wyoming would be handled" and that he was "living with the uncertainty" of how his case would be resolved.

[¶48] Concern about outstanding charges is not extraordinary or unusual for an incarcerated offender with criminal matters pending in multiple jurisdictions. *See Hammond v. United States*, 880 A.2d 1066, 1087 (D.C. 2005) (finding "the lengthy sentence [the defendant] was serving and prior conviction minimizes [the defendant's] claim of anxiety"), *abrogated in part on other grounds by Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006). Additionally, pretrial anxiety—as well as other forms of prejudice—are "inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty." *Berry*, ¶ 46, 93 P.3d at 237 (quoting *Moore v. Arizona*, 414 U.S. 25, 27, 94 S.Ct. 188, 190, 38 L.Ed.2d 183 (1973)). Although Mr. Crebs argues he suffered pretrial anxiety during the delay, he provides only a generalized claim without specifics. He offers no corroborating evidence or testimony, nor does he allege that his anxiety was extraordinary or unusual. Without this "detailed record support," *Castellanos*, ¶ 89, 366 P.3d at 1303, we cannot say "that the appellant experienced an atypical level of anxiety[.]" *Boucher*, ¶ 19, 245 P.3d at 352; *Campbell*, 999 P.2d at 656 (anxiety is typically present with pretrial incarceration, so to prevail an appellant "must demonstrate that she suffered prejudice in an extraordinary or unusual manner"); *Wehr*, 841 P.2d at 114 (refusal to find prejudice when appellant failed to demonstrate "that he suffered prejudice in any extraordinary or unusual manner"); *Webb*, ¶ 24, 401 P.3d at 924 (finding appellant's "blanket statement" about pretrial anxiety "insufficient to establish the extraordinary or unusual pretrial anxiety required to show prejudice"). Mr. Crebs's arguments are insufficient to establish actual prejudice. *Durkee*, ¶ 38, 357 P.3d at 1116 (bare assertions of pretrial anxiety "are insufficient to warrant our consideration of those factors"); *Tate*, ¶ 38, 382 P.3d at 770 (same). This factor weighs against him.

## E.    Balancing of the Factors

[¶49] We find that both parties bore responsibility for portions of the delay. Mr. Crebs committed crimes in more than one county. While Fremont County failed to act, the inaction arose from inadvertence and negligence. Mr. Crebs failed to establish prejudice under the fourth factor, which weighs against him. In such a case, "the other three *Barker* factors **must weigh heavily** in his favor to establish a speedy trial violation." *Fairbourn*, ¶ 59, 465 P.3d at 427 (quoting *Webb*, ¶ 23, 401 P.3d at 924). They do not.

The drastic remedy of dismissal with prejudice is not justified in this case. *Strandlien v. State*, 2007 WY 66, ¶ 19, 156 P.3d 986, 992 (Wyo. 2007).

[¶50] Our ultimate inquiry in assessing a speedy trial claim is whether the delay "substantially impaired the right of the accused to a fair trial." *Webb*, ¶ 15, 401 P.3d at 921 (quoting *Rhodes*, ¶ 17, 348 P.3d at 411). Mr. Crebs's right to a fair trial was not impaired.

## *CONCLUSION*

[¶51] Mr. Crebs's constitutional right to a speedy trial was not violated.

[¶52] Affirmed.

14